Ex parte, Rosa Cruz Vázquez, peticionaria y apelante, *v.* Hirám Vázquez y López, opositor y apelado.

No. 3534.—*Visto:* Abril 1, 1925. *Resuelto:* Mayo 8, 1925.

1. Testamentos—Requisitos y Validez—Testamentos Ológrafos.—Revisten el carácter de testamento ológrafo palabras que, contenidas en una carta familiar que reúne los requisitos todos del artículo 696 del Código Civil, indican la intención deliberada que tuvo su autor de disponer por ellas de sus bienes para después de su muerte.

2. Testamentos—Requisitos y Validez—Testamentos Ológrafos. — El testamento ológrafo puede tomar la forma epistolar.

3. Testamentos—Requisitos y Validez—Testamentos Ológrafos.—Una carta en que el autor informa a su hermana, a quien va dirigida, que ha tomado una póliza de vida y la instituye su heredera por si algo le ocurriere, claramente expresa la intención deliberada del testador de disponer a favor de aquélla de sus bienes para después de su muerte.

4. EVIDENCIA — PRUEBA DOCUMENTAL — ACTOS PÚBLICOS U OFICIALES, PROCEDI-
   MIENTOS, RÉCORDS Y CERTIFICADOS—CERTIFICADOS DE DEFUNCIÓN.—Si bien la
   certificación de defunción es prueba solamente de la muerte e identificación
   de la persona fallecida, las manifestaciones que en ella se hacen pueden
   tener valor en relación con otros elementos de prueba corroborante.
5. TESTAMENTOS — "PROBATE", ACCIÓN PARA ESTABLECERLOS Y ANULACIÓN —
   NATURALEZA Y EFECTO DE LA SENTENCIA O AUTO DICTADO.—La resolución or-
   denando la protocolización de un testamento ológrafo no produce el efecto
   de cosa juzgada (dictum).

SENTENCIA de *Angel Acosta*, J. (Mayagüez), declarando sin lugar
solicitud sobre protocolización de testamento ológrafo. *Revocada,
ordenándose la protocolización solicitada.*

*Alemañy & Ramírez*, abogados de la apelante; *José Sabater* y *José
E. Figueras, Fiscal,* abogados del opositor.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del
tribunal.

Hirám Vázquez López, natural de Puerto Rico, falleció
en el pueblo de Aguada de Pasajeros, Isla de Cuba, el 17 de
enero de 1923.

En 5 de mayo de 1916, el finado dirigió por correo una
carta fechada en Horquita, Isla de Cuba, con expresión del
año, mes y día, a su hermana Rosa Cruz Vázquez, cuyo con-
tenido en lo pertinente, dice:

"Rosa: por lo que pudiera ocurrir, te voy a hacer saber que yo
tomé una póliza de aseguro de vida por la cantidad de cinco mil
pesos a mi nombre, en la compañía Pan American Life Insurance
Company de New Orleans, la cual está en mi poder sin gravamen,
desde el día seis de abril. Tiene el No. 8378. s. Esto te lo in-
formo porque no está demás que tú lo sepas pues como tú eres la
única de mis hermanas soltera que quedas, eres la única heredera,
si algo me ocurriera. Esto, no lo digas: guarda estos dos pliegos
en los que te hablo del asunto y murió."

Fundándose en la manifestación de este párrafo, Rosa
Cruz Vázquez presentó una petición a la corte inferior y
alegando que la citada carta constituye el testamento oló-
grafo de Hirám Vázquez López, instituyéndola su única y
universal heredera, y haber fallecido su hermano siendo sol-
tero sin descendientes ni ascendientes, solicitó la protocoli-

zación de dicho testamento en la notaría del notario Juan Alemany Sosa a fin de que surtiera todos sus efectos legales, esto es, para que adquiera los caracteres de autenticidad y publicidad necesarios a todo testamento privado.

A la petición se acompañó la certificación de defunción del finado, y se pidió además, de acuerdo con el artículo 701 del Código Civil Revisado, la citación de los demás hermanos del finado nombrados Otilio y Mérida Vázquez y sus sobrinos menores de edad, Ernesto, Eneida, Jaime, Hada, Helma e Hirám Busquets y Vázquez, compareciendo todos a la práctica de las diligencias expresadas en el artículo 700 y en las que estuvieron representados dichos menores por el fiscal del distrito.

Practicadas las pruebas tendentes a justificar la identidad del documento, la corte inferior finalmente negó la solicitud y su resolución la funda en los motivos siguientes: 1, no constar la intención del testador, manifiesta y claramente expresada en el sentido de que se tenga por última voluntad la carta que se presenta como testamento ológrafo; 2, porque las cartas por expresas que sean respecto a la disposición de bienes, no pueden formar testamento ológrafo; 3, aparecer de la certificación de defunción que el finado no hizo testamento y que dejó descendientes, y 4, no reunir dicha carta ninguna de las condiciones que exige el Código Civil Revisado.        \

La materia de error que alega la apelante se basa en cada uno de los fundamentos expresados por la corte.

[1] La prueba testifical establece sin discrepancia que es una carta manuscrita y la letra es escrita toda de puño y letra de Hirám Vázquez López y firmada por éste, con expresión del año, mes y día en que fué otorgada.

Hemos de presumir, pues, que al referirse en general la corte inferior en su último motivo de no reunir la carta ninguno de los requisitos que exige el artículo 696 del Código Civil Revisado para tenerla como testamento ológrafo, se fundó más bien en los restantes motivos de su resolución.

[2] La corte inferior cita a Scævola, tomo 12 (ed. de 1896), pág. 368, para establecer la proposición de que el testamento ológrafo no puede tomar la forma epistolar y alude al Código Civil de la República de Argentina que lo prohibe.

Cuando se escribió el comentario de Scævola efectivamente el Código Civil español exigía como uno de los requisitos de forma que el testamento ológrafo habría de extenderse en papel sellado, pero con posterioridad a dicho comentario se modificó la ley y se suprimió aquella formalidad externa.

En este particular Manresa, (Tomo 5, p. 514, 4ª ed., 1911, art. 688), a su vez, dice:

"Como puede comprobarse comparando el texto del artículo que comentamos en la presente edición, con el que aparecía en las ediciones anteriores, se ha suprimido uno de los requisitos que al redactarse el Código Civil, estimó el legislador como esencial para la validez del testamento ológrafo: la extensión en el papel sellado correspondiente al año de su otorgamiento. Esta reforma la llevó a cabo la ley de 21 de julio de 1904, que también modifica el texto del art. 732."

Es inútil decir que en Puerto Rico con el cambio de nacionalidad y por supuesto desde antes de 1904, tal requisito no tuvo razón de ser con la supresión de tal impuesto.

[3] En cuanto a que no consta la intención del testador, manifiesta y claramente expresada en la carta que se alega constituir el testamento ológrafo del finado, la cuestión es más fundamental. Las palabras, sin embargo, que usa Hirám Vázquez López indican claramente la intención deliberada que tuvo de disponer de sus bienes para después de su muerte, cumpliendo con este requisito que es esencial en los testamentos. Él informa a la peticionaria de haber tomado una póliza de seguro de vida, consignando el nombre de la compañía, la cantidad del seguro y el número de la póliza. El testador habla pues de un contrato que generalmente surte sus efectos legales para después de la muerte y luego

en un lenguaje corriente, expresa la razón de que siendo ella la única hermana que queda soltera, la instituye heredera "si algo me ocurriera," lo que de un modo llano y expreso equivale decir que ella sería su única heredera para el caso que le sobreviniera su muerte.

No parece que fuese necesario expresarse más categóricamente la última voluntad del testador. Aun cuando hubiera empleado la palabra testamento, que no era indispensable, para hacer constar su intención de disponer de sus bienes para después de su muerte, no habría una forma más clara que la empleada en este caso por el testador.

En el caso de *Pastor* v. *Miró,* decidido por esta Corte Suprema en marzo 30, 1925 (34 D.P.R. 53), además de dar por supuesta la forma epistolar que puede tener el testamento, se cita para distinguirlo el caso resuelto por la Corte Suprema de España en sentencia de 8 de junio de 1918, y en el cual a pesar de usarse la palabra testamento, el lenguaje de que se valió el testador no es más claro ni más preciso que el usado en el presente caso. El párrafo pertinente de la opinión de esta Corte Suprema, es como sigue:

"Por otra parte, las palabras contenidas en la carta que el apelante considera ser testamento ológrafo y las que estima ser su ratificación, no revisten tal carácter de testamento, pues perdidas en una extensa carta de negocios y familiar no demuestran la intención deliberada de disponer de sus bienes para después de su muerte, requisito que es esencial en los testamentos; distinguiéndose este caso del que fué resuelto por el Tribunal Supremo de España en 8 de junio, 1918, en que en dicho caso aparecía claramente la intención de testar al decir 'Peñafiel, a 24 de octubre, 1915. Pasicos de mi vida: En esta primera carta de novios va mi testamento, todo para ti para que me quieras siempre y no dudes del cariño de tu Matilde, Rubricado,' no solamente porque se usó la palabra testamento, aunque no era de absoluta necesidad, sino porque todas sus palabras demuestran la intención clara y manifiesta de disponer de sus bienes para después de su muerte, requisito que no podemos encontrar en la carta de 17 de julio, 1919."

[4] El último motivo que se alega como error se refiere a haberse basado la corte inferior en las manifestaciones que se hacen constar en la certificación de defunción de que Hirám Vázquez López estaba casado, dejaba una hija legítima nombrada . Cary Vázquez y Figueroa y que no hizo testamento.

La certificación de defunción es prueba solamente de la muerte e identificación de la persona fallecida. Las demás manifestaciones que en ella se hacen constar tal vez, según una mayoría de los jueces, podrán tener algún valor en relación con otros elementos de evidencia corroborante, pero de acuerdo con una minoría bajo ninguna circunstancia tienen ningún peso probatorio por ser prueba de referencia.

[5] Por otra parte, como la protocolización de un testamento ológrafo es más bien un acto de jurisdicción voluntaria y la resolución que ordenando la protocolización se dicte no produce el efecto de cosa juzgada, el derecho de los herederos forzosos que puedan existir o de las personas que se crean perjudicadas queda a salvo para recurrir al juicio ordinario.

*Por todas estas razones debe revocarse la sentencia apelada y dictarse otra declarando justificada la identidad del testamento ológrafo otorgado por Hirán Vázquez López en 5 de marzo de 1916, ordenando su protocolización.*