Ex parte Providencia Planis, peticionaria y apelante, *v.* El Pueblo de Puerto Rico, opositor y apelado; Pedro José, Rosa Laura y María Isabel Boada Osorio, representados por su madre con patria potestad Isabel Osorio, interventores.

No. 5553.—*Sometido:* Junio 25, 1931. *Resuelto:* Julio 22, 1931.

*Antonio L. López,* abogado de la apelante; *González Fagundo & González Jr.,* abogados de los interventores, como *amicus curiae* éstos.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

En 31 de diciembre de 1929, Román Boada falleció en Caguas. En agosto 20, 1930, Providencia Planis radicó una petición en la Corte de Distrito de Humacao alegando la muerte de Román Boada, y acompañando un escrito que se alegó ser el testamento ológrafo del referido Román Boada, mantuvo en esa petición que el alegado testador dejó todos sus bienes a ella; que el aludido Román Boada no tenía ascendientes ni descendientes. Se pidió a la corte que ordenara la protocolización del documento. La corte llegó a la conclusión de que al fallecimiento de Román Boada un notario estuvo presente e hizo una declaración jurada en este procedimiento y que a solicitud de la peticionaria el ameritado notario conservó en su custodia el escrito; que el referido escrito lo había sido a máquina; que el finado no sabía escribir; que no tenía en su establecimiento ni pluma ni máquina; que el dicho testamento fué mecanografiado por el referido notario y firmado por el alegado testador.

Según indicó la corte inferior hay varias maneras de hacer un testamento, teniendo cada una de ellas requisitos legales distintos.

Los requisitos para un testamento ológrafo que el escrito de que se trata pretendía ser, están expuestos en el artículo 696 del Código Civil así:

"El testamento ológrafo sólo podrá otorgarse por personas mayores de edad.

"Para que sea válido este testamento, deberá estar escrito todo y firmado por el testador, con expresión del año, mes y día en que se otorgue. Si contuviere palabras tachadas, enmendadas o entre renglones, las salvará el testador bajo su firma."

De suerte que se verá que un testamento ológrafo en Puerto Rico, si bien no requiere testigos, debe ser escrito enteramente por la persona que trata de testar.

El escrito ofrecido no era de puño y letra del testador ni aun fué mecanografiado por él. En sentido alguno pretendía ser un testamento abierto o cerrado. El notario que lo escribió no estaba actuando en su capacidad de tal sino meramente tratando de ayudar al pretendido testador en la redacción de un testamento ológrafo.

La forma de testamentos es algo solemne creado por el estatuto. Si no se sigue la forma delineada por el estatuto no existe testamento. Según apuntó hace mucho tiempo el Sr. Thayer, las formalidades de un testamento no son meras cuestiones de evidencia sino requisitos substantivos. Si no se llenan estos requisitos, no hay testamento.

Si el testador en este caso hubiera deseado hacer un testamento abierto, él pudo haber acudido ante un notario y expresado su intención ante testigos en la forma exigida por la ley. Si el alegado testador hubiese interesado hacer un testamento cerrado, él pudo haber hecho que el testamento se hiciera en la forma en que se otorgó, pero entonces hubieran sido de rigor las otras formalidades de llevar un testamento cerrado a un notario en presencia de testigos. Nada de esto hizo Román Boada. Él trató de hacer un testamento ológrafo sin escribirlo de su puño y letra, según exige la ley. Otras consideraciones a este respecto pueden hallarse en la opinión de la corte inferior.

La apelante presenta un número de argumentos al efecto de que la intención de una persona debe prevalecer si esa intención puede razonablemente inferirse del escrito que en efecto se otorgó; que los tribunales de España y de otros sitios al interpretar testamentos han permitido variaciones de la forma estricta delineada por la fraseología del código. La apelante también cita de Canadá, donde se resolvió que surtía el efecto de un testamento un documento enteramente mecanografiado, aunque el estatuto exigía que fuera de puño y letra del testador. No estamos enterados de la práctica de los tribunales de Canadá, y en todo caso nos sentimos obliga-

692

dos por las disposiciones terminantes de la ley en Puerto Rico. Es aun posible que en el caso canadiense se demostrara que el papel fué mecanografiado en su totalidad por el testador mismo. Una de las teorías de la ley al requerir a un testador que escriba el testamento por sí mismo y que hasta anote las correcciones de su propio puño y letra, es para impedir fraudes. Nos hallamos ante un caso de *lex scripta* y no encontramos motivo o excusa para desviarnos de él.

*Debe confirmarse la sentencia apelada.*