Ex Parte, Ofelia Collazo Vda. de Satorra, peticionaria.
Petra Dávila Vda. de Ledesma, opositora y apelante.

No. 6438.—*Sometido:* Junio 24, 1933. *Resuelto:* Julio 28, 1933.

*E. Campos del Toro,* abogado de la apelante; *J. Vendrell* y *A. Quirós Méndez,* abogados de la peticionaria.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Ofelia Collazo viuda de Satorra, acompañada de tres testigos, compareció ante la Corte de Distrito de Arecibo y le pidió que ordenara la protocolización de una carta que ella consideraba testamento de Francisco C. Dávila, y la Corte, estimando acreditados el fallecimiento del Sr. Dávila y la citación de las personas que pudieran tener interés en el asunto y "justificada la identidad del pliego que la peticionaria denomina testamento," ordenó su protocolización en la notaría del Lic. Gustavo Zeno Sama, "quedando a salvo los derechos de los interesados en la herencia de dicho causante (Francisco C. Dávila) para ejercitarlos en la forma y modo que ellos estimen conveniente."

No conforme Petra Dávila viuda de Ledesma apeló de la resolución para ante este Tribunal, solicitando la desestimación del recurso por no estar autorizado por la ley. Se opuso la apelante citando los casos de *Ex parte Planis* v. *Pueblo*, 42 D.P.R. 689 y *Vázquez* v. *Vázquez*, 34 D.P.R. 241.

En Ex parte Planis, supra, esta Corte confirmó en apelación una resolución dictada por la Corte de Distrito de Humacao declarando sin lugar la protocolización de un alegado testamento ológrafo y en *Vázquez* v. *Vázquez*, supra, revocó otra resolución igual dictada por la Corte de Distrito de Aguadilla. En ninguno de dichos casos se suscitó la cuestión de si era o no apelable la resolución recurrida. Suscitada directamente ahora debemos resolverla por sus propios méritos.

La materia de protocolización de testamentos estaba regulada por la Ley de Enjuiciamiento Civil Española y por el Código Civil antiguo. Hoy lo está por la Ley de Procedimientos Legales Especiales y por el Código Civil Revisado. Refiriéndose a los testamentos ológrafos dice Manresa en sus Comentarios a la Ley de Enjuiciamiento Civil:

"Como no estaba autorizada esta forma de testar cuando se publicó la ley de Enjuiciamiento Civil, no pudo ordenarse en ella el procedimiento para elevar a escritura pública y protocolizar el testamento ológrafo, y sin duda por esto lo ha ordenado el mismo Código, en sus arts. 690 al 693, que creemos deber insertar íntegros para suplir la deficiencia de la ley procesal, y sin ninguna observación por la claridad y precisión con que están redactados." 6 Manresa. Comentarios a la Ley de Enjuiciamiento Civil, 390.

Esos artículos 690 al 693 son esencialmente iguales a los artículos 640 a 643 de nuestro Código Civil Revisado. Ed. 1930. El 643 contiene, sin embargo, las siguientes disposiciones que no figuran en el 693 del Código Civil Antiguo:

". . . que constituirán título bastante para la inscripción, total o parcial, en el registro de la propiedad, de los bienes inmuebles en que consista la herencia . . ."

Expresamente no otorga el legislador recurso de apela-

ción contra el acuerdo del juez decretando o negando la protocolización. Antiguamente no existía, según dice Manresa en la página 407 del tomo 6 de sus ya citados Comentarios:

"Contra dicho auto, conceda o niegue la protocolización, no se da recurso alguno, y ha de llevarse a efecto, no obstante oposición, quedando a salvo el derecho de los interesados para ejercitarlo en el juicio declarativo que corresponda, como se ordena también en dicho artículo."

A no ser por lo dispuesto en el último párrafo del artículo 643 del Código Civil, Ed. 1930, igual a lo prescrito en el último párrafo del artículo 693 del antiguo Código Civil, el caso podría considerarse comprendido dentro del número primero del artículo 295 del Código de Enjuiciamiento Civil, ya que se trata de un procedimiento especial, pero dicho párrafo parece indicar que el acuerdo sobre la protocolización no puede considerarse como sentencia definitiva a los efectos de la apelación. Dice:

"Cualquiera que sea la resolución de la corte de distrito, se llevará a efecto, no obstante oposición, quedando a salvo los derechos de los interesados para ejercitarlos en el juicio que corresponda."

Ni las partes han citado ni nosotros hemos podido encontrar decisión alguna de esta Corte que resuelva directamente la cuestión planteada, pero el razonamiento en el caso de *Solá* v. *Solá,* 30 D.P.R. 758 parece aplicable para sostener que la apelación no existe.

Se trataba en dicho caso de una declaratoria de incapacidad. Se transcribieron en la opinión los artículos 250 al 255 del Código Civil Revisado, el último de los cuales, dice:

"Artículo 255.—Contra los autos que pongan término al expediente de incapacidad podrán los interesados deducir demanda ordinaria por el procedimiento del juicio oral y público."

"Y continuó la Corte expresándose como sigue:

"¿Excluye lo dispuesto en el último de los artículos transcritos, el recurso de apelación? ¿Se trata de una sentencia definitiva?

"El recurso de apelación es de naturaleza estatutoria y al fijar el código los casos en que procede, los clasifica en tres grupos. Véase

el artículo 295 del Código de Enjuiciamiento Civil. El primer grupo se refiere a sentencias definitivas en pleitos o procedimientos comenzados en las propias cortes de distrito; el segundo, a sentencias dictadas por dichas cortes en grado de apelación, y el tercero, a ciertas resoluciones que expresamente se designan.

"No cabe comprender el auto de que se trata en el segundo, ni en el tercer grupo. ¿Cabe comprenderlo en el primero? La ley habla en él de sentencias definitivas y aquí el mismo legislador calificó la resolución de auto. Y si bien expresa que el auto 'pone término al expediente de incapacidad,' inmediatamente dice que 'los interesados podrán deducir demanda ordinaria por el procedimiento del juicio oral y público.' Esto es, que a menos que el auto se consienta, el procedimiento *continúa en la misma corte de distrito* con las garantías de un juicio más amplio. Siendo ello así, no es posible reconocer al auto el carácter de sentencia definitiva a que se refiere el primer grupo.

"Interpretando, pues, el artículo 295 en su *corriente significado,* es necesario concluir que no autoriza el recurso de apelación que se ha interpuesto, . . ."

Así sucede en este caso de la protocolización. Es cierto que la medida tiene gran importancia. Ya hemos visto que por disposición expresa de la ley las copias constituirán título bastante para la inscripción, total o parcial, en el registro de la propiedad, de los bienes inmuebles en que consista la herencia, pero está limitada también expresamente por la ley al reconocimiento de la autenticidad inmediato del documento, quedando a salvo los derechos de las personas a quienes pudiera perjudicar que deberán hacerlos valer en el juicio correspondiente.

Como la disposición ha permanecido igual en ambos Códigos, parece conveniente transcribir lo que dice Manresa en sus Comentarios al Código Civil refiriéndose a los artículos 689 al 693. En parte, se expresó así:

"Como el testamento ológrafo es, por la forma de su otorgamiento, la expresión meramente privada de la última voluntad del testador, requiere para su validez y eficacia que debidamente se acredite la identidad del mismo, y hecho esto, se protocolice en el registro público correspondiente para que adquiera los caracteres de autenticidad y publicidad necesarios a todo testamento privado.

"A partir de dicha protocolización adquirirá la cualidad de instrumento público como los demás documentos de esta clase, teniendo la misma fuerza legal que ellos; y por lo tanto, será considerado como la verdadera y legítima disposición testamentaria del otorgante, mientras no fuere declarada en forma su nulidad o ineficacia total o parcial.

"Nuestro Código, como todas las legislaciones extranjeras, ha estimado precisa para su validez y como garantía de verdad la protocolización del testamento ológrafo, del mismo modo que la exige para todos los otorgados sin intervención de notario y para los cerrados, y en los cinco artículos que preceden se establece, no sólo el principio de dicha necesidad, sino también las reglas que se han considerado más convenientes y adecuadas al objeto a que dicho requisito obedece, y los preceptos más eficaces para conseguir su cumplimiento.

\* \* \* \* \* \* \*

\* \* \* \* \* \* \*

"En cuanto a la citación que el art. 692 manda hacer a las personas expresadas en el mismo, nada tenemos que decir, pues no necesita comentario alguno esta garantía, toda vez que esas personas son por su orden los interesados, en primer término, en que se depure la identidad y legitimidad del testamento, por ser los llamados por la ley a la sucesión legítima, en el caso de que la protocolización de dicho testamento fuere denegada. Es natural y lógico que en el caso de concurrir dichas personas a las diligencias de protocolización, puedan hacer en el acto, de palabra, las observaciones que estimen oportunas sobre la autenticidad del testamento, pues precisamente para ese efecto son llamadas, y así lo dispone dicho artículo.

"Pero téngase presente que si bien el juez habrá de tomar en consideración dichas observaciones para formar su juicio sobre la identidad del testamento, aunque se hagan con el carácter de oposición, y aunque se formule ésta por escrito, tal oposición no puede producir en ningún caso el efecto de hacer contencioso el expediente de jurisdicción voluntaria, ni el de impedir que el juez dicte la resolución que estime procedente otorgando o negando la protocolización del testamento cerrado. Cualquiera que sea esta resolución, ha de llevarse a efecto, no obstante la oposición, quedando a salvo el derecho de los interesados para ejercitarlo en el juicio que corresponda, como se ordena en el párrafo 2º del art. 693. Dicho juicio, para impugnar o sostener la identidad y validez del testamento, habrá de ser, por regla general, el ordinario de mayor cuantía." 5 Manresa. Comentarios al Código Civil, 511, 519.

También el párrafo final de la opinión de esta Corte en el citado caso de *Vázquez* v. *Vázquez,* 34 D.P.R. 241, 246, a saber:

"Por otra parte, como la protocolización de un testamento ológrafo es más bien un acto de jurisdicción voluntaria y la resolución que ordenando la protocolización se dicte no produce el efecto de cosa juzgada, el derecho de los herederos forzosos que puedan existir o de las personas que se crean perjudicadas queda a salvo para recurrir al juicio ordinario."

Por virtud de todo lo expuesto, *debe declararse con lugar la moción de la apelada y desestimarse en su consecuencia el recurso.*