CC-1998-917                                        1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ab Intestato:<br>Alfonso Modesto Lugo<br>Rodríguez<br><br>Ex Parte<br><br>Lionel Lugo Rodríguez<br>  Peticionario-Recurrente<br><br>Carmen Herminia Lugo<br>Rodríguez<br>  Interventora-Recurrida | Certiorari<br><br>2000 TSPR 99 |

Número del Caso: CC-1998-0917

Fecha: 28/junio/2000

Tribunal de Circuito de Apelaciones: Circuito Regional IV

Juez Ponente: Hon. Rafael Martínez Torres

Abogado de la Parte Peticionaria:

            Lcdo. José Luis Novas Dueño

Abogado de la Parte Recurrida:

            Lcdo. Harry N. Padilla Martínez

Materia: Protocolización de Testamentos

       Este documento constituye un documento oficial del Tribunal
       Supremo que está sujeto a los cambios y correciones del
       proceso de compilación y publicación oficial de las
       decisiones del Tribunal. Su distribución electrónica se hace
       como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ab Intestato:

Alfonso Modesto Lugo
Rodríguez

Ex Parte

Lionel Lugo Rodríguez                 CC-1998-917        Certiorari

   Peticionario-Recurrente

Carmen Herminia Lugo
Rodríguez

   Interventora-Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 28 de junio de 2000

I

Alfonso M. Lugo Rodríguez falleció el 12 de diciembre de 1996, en cuyo momento le sobrevivieron sus hijos Carmen H. Lugo y Lionel Lugo.

El 7 de enero de 1997, Lionel presentó ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez (Civil Núm. IJV97-0001), asunto sobre cartas testamentarias. Solicitó se ratificara el deseo de su padre y nombrara albacea del caudal relicto. Basó su pedido en un testamento abierto otorgado, el 29 de abril de 1993, en Ponce, mediante la escritura Núm. 49, ante el notario público Raúl Ramos Torres.

Días después, el 24 de enero, Carmen solicitó la protocolización de un testamento ológrafo en el Tribunal de Primera Instancia, Subsección de Distrito, Sala de San Germán (Civil Núm. CD97-51). En dicho testamento se revocaba el abierto del 1993, y se designaban a los dos hermanos herederos en partes iguales.

El 25 de marzo, Lionel solicitó al Tribunal de Primera Instancia, Sala Superior de San Germán, la protocolización de dos testamentos ológrafos que alegadamente había dejado su padre. Los testamentos leen: **"Marzo 24, 1994. Es mi deseo cuando muera que el testamento de abril de 1993 sea válido. Alfonso Lugo".** **"Abril 24, 1994. Es mi deseo al morir que el testamento de abril de 1993 sea válido revocando al anterior. Alfonso Lugo".**

En la vista para la adveración de estos testamentos ológrafos, se presentaron tres testigos. Lionel fue el primero. Señaló que los documentos presentados eran escritos de puño y letra de su padre y no albergaba dudas de su letra y firma. El segundo testigo, Cruz Colón Lugo, agrónomo de profesión y agricultor testificó que conoció al causante a través de su trabajo. Además, fue uno de los testigos del testamento abierto otorgado en Ponce en 1993. Al mostrarle los documentos dijo que la firma era igual a la que vio en Ponce en 1993. Sobre la letra, durante el contrainterrogatorio, admitió que había visto al causante tomar notas, a unos tres pies de distancia, cuando él lo orientaba sobre préstamos. Eso fue lo más cerca que estuvo de sus escritos; no obtuvo copia de las notas, tampoco las leyó, cotejó o corrigió. Simplemente lo veía escribir a una distancia de unos tres pies. Admitió que nunca había visto escribir al causante un texto tan "extenso" como los testamentos que se le presentaron, sino tan sólo una fecha escrita. El último testigo presentado, fue Amilcar Gutiérrez Acosta. Declaró que fue empleado del causante desde julio de 1994. Conocía su firma a través de los cheques que le expedía por concepto de su salario. Sobre la letra, indicó que durante la vigencia de su empleo el causante alegadamente le dio unas cinco o seis notas para hacer

recados. De éstas, recordó sólo una cuyo contenido fue el siguiente: manga, raíz, martillo y llave.[1]

Concluido el testimonio de los tres testigos, Lionel solicitó al Tribunal que le permitiese presentar **testimonio** de un perito dado que el testigo Cruz Colón "tuvo duda sobre el texto de los documentos..." El Tribunal se negó ya que entendió que se había desfilado ante sí prueba suficiente para resolver.

El 3 de abril, Instancia decretó que "no abriga[r] duda racional alguna de que dichos documentos (los presentados por Lionel), constituyen disposiciones de última voluntad, escritos y firmados por la mano de Don Alfonso Modesto Lugo Rodríguez..." Ordenó su protocolización.

Inconforme, Carmen presentó certiorari ante el Tribunal de Circuito de Apelaciones. Adujo que Instancia erró al ordenar la protocolización de los documentos, toda vez que no todos los testigos presentados para identificarlos eran aptos ni idóneos. En oposición, Lionel solicitó la desestimación del recurso amparado en la Regla 67 del Reglamento del Tribunal de Circuito. Además, planteó que el recurso, en vista de que no se habían protocolizados los testamentos, era académico.

El Tribunal de Circuito oportunamente rechazó los argumentos de Lionel. Dictaminó que el asunto era revisable vía certiorari en virtud del Art. 4.002 (e)[2] del Plan de Reorganización Núm. 1 de la Rama

---

[1] La susodicha nota supuestamente se originó en una encomienda de Lugo Rodríguez al testigo. Durante el contrainterrogatorio, se cuestionó la necesidad o existencia del escrito, dado que el propio Lugo Rodríguez acompañó al testigo a la ferretería. Se invocó esto, aparentemente, con el fin de establecer la inexistencia de la nota y la subsiguiente inferencia la falta de conocimiento de los rasgos caligráficos del testador. Además, surge la interrogante ¿venden maíz en las ferreterías?

[2] Reza:

"El Tribunal de Circuito de Apelaciones conocerá en los siguientes asuntos:

(a) ....

(e) Mediante auto de certiorari expedido a su discreción, **revisará las resoluciones finales en procedimiento de jurisdicción voluntaria**, dictadas por el Tribunal de Primera Instancia, incluyendo el Tribunal de Distrito durante el

Judicial de 28 de julio de 1994, según enmendado conocido como "La Ley de la Judicatura de Puerto Rico de 1994" (4 L.P.R.A. sec. 22k(e)). Asimismo, ordenó a Lionel mostrar causa por la cual no debía expedirse el auto. Lionel compareció.

Previa comparecencia de Lionel, el Tribunal de Circuito (Hons. Rossy García, Martínez Torres y Rodríguez García) dictó sentencia, mediante la cual expidió el auto y ordenó la celebración de una vista de adveración a la que comparezcan tres testigos que conozcan tanto la letra como la firma del testador y se observen las demás exigencias del Código Civil. Asimismo, ordenó la anulación de las inscripciones en el protocolo del notario y en el Registro de Testamentos e, instruyó al Tribunal de Instancia —una vez señalada la nueva vista de adveración—, mandar a remover los testamentos del protocolo notarial y trasladarlos a la vista. El notario prepararía entonces la correspondiente acta aclaratoria. El foro intermedio basó su decisión, primero, reiterando que tenía jurisdicción bajo la Ley de la Judicatura y en el hecho de que el Art. 643 del Código Civil, 31 L.P.R.A. sec. 2167 —que provee la acción ordinaria de impugnación—, no deroga la evidente intención legislativa de reconocer otro mecanismo procesal alterno. Añadió el Tribunal, que el testigo Cruz Colón estaba imposibilitado de adverar el texto del documento presentado, ya que admitió que sólo le era familiar la firma del testador y que no había visto escrito alguno de éste, por lo que no cumplía con los requisitos legales para ser considerado como un testigo capacitado e idóneo para reconocer los rasgos caligráficos del testador. Por último, dictaminó su facultad para ordenar anular el otorgamiento.

Inconforme, Lionel acudió ante nos.[3] Revisamos.

---

proceso de su abolición. En estos casos, el recurso de certiorari se formalizará presentando una solicitud a tales efectos dentro de los treinta (30) días siguientes al archivo en autos de copia de la notificación de la resolución. Este término es jurisdiccional." Énfasis suplido.

[3] Discute los siguientes señalamientos:

II

La Ley de la Judicatura de 1994, Art. 4.002(e), transformó radicalmente el ordenamiento procesal hasta entonces vigente al autorizar certioraris para la revisión de resoluciones recaídas en procedimientos de jurisdicción voluntaria.

El caso ante nos cae en esa categoría. El testamento es un acto formal o solemne (ad solemnitates). La última voluntad expresada de otra manera no tiene valor ante la ley, ya que por mandato del Legislador **la forma es esencial al acto jurídico**. Rodríguez Sardenga v. Soto Rivera, 108 D.P.R. 733 (1979). Respecto al testamento ológrafo, su validez queda estrictamente atada a las siguientes **formalidades**: todo escrito y firmado por el testador, con expresión del año, mes y día en que se otorgue y si tuviera palabras tachadas, enmendadas o entre renglones, salvadas por el testador bajo su firma. Art. 367 Código Civil, 31 L.P.R.A. 2161. La "[f]ormalidad es cada requisito particular sin los cuales el testamento no nace a la vida jurídica." González Tejera, Derecho Sucesorio Puertorriqueño, Vol. II, San Juan, pág. 105 (1983). Paz v. Fernández, 76 D.P.R. 742 (1954).

En lo pertinente a la formalidad de autografía (escrito todo de mano propia) y a la firma, la comprobación de la identidad del testador se verificará mediante el procedimiento de adveración. El testamento ológrafo, como documento privado carece de eficacia jurídica mortis causa hasta tanto no culmine el procedimiento ex parte de adveración y protocolización. González Tejera, op. cit., pág. 129. Sin embargo, este

---

"1. Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que la Ley de la Judicatura de 1994 según enmendada le concede competencia para revisar por vía de certiorari una resolución final del Tribunal de Primera Instancia acordando la protocolización de un testamento ológrafo.

2. Erró el Honorable Tribunal de Circuito de Apelaciones al descartar las determinaciones de hecho del Tribunal de Primera Instancia y considerar que no se había autenticado debidamente por los testimonios presentados los testamentos ológrafos cuya protocolización se interesaba.

3. Erró el Honorable Tribunal de Circuito de Apelaciones al considerar un recurso sobre un asunto académico."

procedimiento tiene un doble carácter, a saber, verificar la autografía y firma, y segundo, autorizar su protocolización. El Art. 654 del Código Civil, 31 L.P.R.A. 2191, dispone que "[l]os testamentos otorgados sin la autorización del notario serán ineficaces si no se elevan a escritura pública y se protocolizen...." **En vista de este precepto no podemos caracterizar como meramente procesal la protocolización; en su fondo goza de esencialidad formal.**

El trámite implica -luego de la presentación del documento y la acreditación del fallecimiento de su autor- que el Tribunal de Primera Instancia cite al cónyuge supérstite, de haberlo, descendientes y ascendientes y, en su defecto, los hermanos.[4] **Es necesaria la comparecencia de tres testigos que conozcan la letra y firma del causante para dar comienzo al mismo.**[5]

Presentado el testamento y acreditado el deceso, el juez rubricará, conjuntamente con el Notario, todos sus folios y, de quedar convencido que la letra y firma pertenece a quien se le atribuye, ordenará su protocolización. El convencimiento de la autografía del testamento la obtendrá a base de los testimonios vertidos por los testigos. **No obstante, el juez puede ordenar el cotejo pericial de las letras, de creerlo necesario, así como exigir prueba de peritos calígrafos.**[6] Además, los interesados pueden hacer observaciones oportunas relacionadas con la letra y firma del testador; sin embargo, ello no impone al juzgador el deber de autorizar un interrogatorio ni abrir las puertas para dilucidar asuntos distintos a la autografía. Cabassa Vda. de Fajardo v. Corte, 47 D.P.R. 372 (1934).

III

---

[4] Art. 642 Código Civil, 31 L.P.R.A. 2166.

[5] Art. 641 Código Civil, 31 L.P.R.A. 2165.

[6] Id.

Antes de la aprobación del citado Art. 4.002(e) de la Ley de la Judicatura de 1994, los interesados en cuestionar el testamento - ya por autenticidad como

contenido-, podían promover juicio. La disponibilidad de esta acción civil ordinaria significaba que la validez del testamento así como el procedimiento de adveración y protocolización no se transformaba en contencioso. Cabassa Vda. de Fajardo v. Corte, supra.

Inicialmente, nuestra jurisprudencia pasada admitió apelaciones contra la negativa de una solicitud de protocolización sin siquiera problematizarse su revisión. Vázquez v. Vázquez, 34 D.P.R. 241 (1925); Ex Parte Planis v. El Pueblo, 42 D.P.R. 689 (1931). Sin embargo en Ex parte Collazo, 45 D.P.R. 609 (1933), confrontamos la interrogante sobre la viabilidad de esa "revisión" y resolvimos que una resolución autorizando o no la protocolización era inapelable.

Las mismas razones que entonces pesaron para esa solución, nos mueven hoy a apartarnos y revocar dicha norma: primero, la resolución no constituye sentencia definitiva, y segundo, la autorización de la Asamblea Legislativa.

En su versión original, inalterada hasta el presente, el Art. 643 del Código Civil no concedía (ni concede) recurso alguno contra la autorización o denegatoria de protocolización. La única vía en que quedaban a salvo los derechos de los afectados, bajo el ordenamiento vigente hasta 1994, era mediante juicio declarativo, no porque fuera la única forma concebible, sino porque era la exclusivamente autorizada por el Legislador.

Sin embargo, hemos visto que la Ley de la Judicatura de 1994, proveyó un certiorari para los interesados revisar los procedimientos de jurisdicción voluntaria, como lo es la autorización o denegatoria de protocolización del testamento ológrafo.

Este vehículo procesal, a diferencia de una apelación en juicio ordinario, puede de forma expedita revisar la corrección de una determinación sobre la autografía o el procedimiento mismo de adveración. Sabido es que el certiorari es un recurso discrecional, que viabiliza la justa y pronta adjudicación. Por un lado, está disponible el mecanismo de orden para mostrar causa, de comparada utilidad y

eficacia; por otro, si careciera de méritos, puede ser resuelto mediante breve resolución explicativa.

Cuando lo confrontamos con el juicio declarativo ordinario y una eventual apelación –en que se puede cuestionar la autenticidad del testamento respecto a la firma del causante, **pero además**, la validez de su contenido, capacidad del testador, observancia de requisitos formales, veracidad de la fecha, etc., (distribución, mandas, legados, etc.)–, es evidente que se demorará inevitablemente la determinación final.

La comprobación de la identidad de la firma del testador, en unión a la autorización de protocolización, genera ciertos derechos inmediatos[7] que, de cerrarse inmediatamente las puertas apelativas, quedarían afectados. No podemos suscribir ese curso decisorio, que para todos efectos, en este extremo, anula el certiorari establecido por la Ley de la Judicatura.[8]

Concluimos que el Tribunal de Circuito tenía jurisdicción para discrecionalmente, vía certiorari, ejercer su facultad revisora.

---

[7] Por ejemplo: los herederos instituidos en el testamento se reputan frente a todo el mundo como tales y los derechos sucesorios de los herederos testamentarios sobre bienes inmuebles del causante pueden ser anotados en el Registro de la Propiedad.

[8] Bajo la tesis tradicional, el Poder Judicial sólo puede adjudicar "controversias genuinas surgidas entre partes opuestas que tienen interés real en obtener un remedio" –E.L.A. v. Aguayo, 80 D.P.R. 552 (1958)–. Es respetable pues, la perspectiva de algunos juristas y abogados que sostienen que el certiorari que nos ocupa, es innecesario y carece de lógica.

Frente a esa postura, otros aducen que la visión original ha quedado un tanto rezagada con el advenimiento en las últimas décadas de todo un esquema legislativo y jurídico apuntalado en el derecho administrativo. Por vía de ejemplo, la Ley de Asuntos No Contenciosos Ante Notario –Ley Núm. 282 de 21 de agosto de 1999–, asigna a los notarios competencia concurrente con los Tribunales, para atender algunos procedimientos de jurisdicción voluntaria. (Arts. 2 y 3).

El planteamiento en su fondo, no planteado directamente en este recurso, conllevaría examinar la validez constitucional del Art. 4.002 (e) de la Ley de la Judicatura. Basado en la doctrina de los límites de la revisión judicial –los tribunales no debemos enjuiciar la constitucionalidad de un estatuto a menos que sea estrictamente necesario–, nos abstenemos de explorar esa ruta decisoria.

Los restantes dos señalamientos de error no ameritan discusión. Es obvio que el testigo Cruz Colón no satisfizo el criterio de idoneidad en el extremo de certificar la escritura del testador. Y ciertamente el recurso no era académico por haberse realizado la protocolización. Ese

trámite erróneo no es irrevocable y fue atendido satisfactoriamente en el mandato del Tribunal de Circuito.

Se dictará Sentencia confirmatoria.


ANTONIO S. NEGRÓN GARCÍA
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ab Intestato:

Alfonso Modesto Lugo
Rodríguez

Ex Parte

Lionel Lugo Rodríguez         CC-1998-917     Certiorari

   Peticionario-Recurrente

Carmen Herminia Lugo
Rodríguez

   Interventora-Recurrida

SENTENCIA

San Juan, Puerto Rico, a 28 de junio de 2000

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se dicta sentencia y confirma la del Tribunal de Circuito de Apelaciones de fecha 31 de agosto de 1998.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin opinión escrita. El Juez Asociado señor Corrada del Río emitió Opinión Disidente a la cual se une el Juez Asociado señor Hernández Denton.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

AB Intestado:

Alfonso Modesto Lugo
Rodríguez

Ex Parte

Lionel Lugo Rodríguez                    CC-1998-917

Peticionario-Recurrente

Carmen Herminia Lugo
Rodríguez

Interventora-Recurrida

Opinión Disidente emitida por el Juez Asociado señor Corrada del Río a cual se une el Juez Asociado señor Hernández Denton.

San Juan, Puerto Rico, a 28 de junio de 2000.

La Opinión mayoritaria de este Tribunal resuelve que el artículo 4.002(e) de la Ley de la Judicatura de Puerto Rico de 1994, 4 L.P.R.A. sec. 22 k(e) (Supl. 1998), le da facultad al foro apelativo intermedio para revisar, mediante certiorari, una resolución final del Tribunal de Primera Instancia autorizando o denegando la adveración y protocolización de un testamento ológrafo. La mayoría concluye que la intención legislativa al aprobar el referido artículo fue dejar sin efecto a *Ex Parte Collazo*, 45 D.P.R. 609 (1933), donde resolvimos que una resolución a esos efectos es inapelable.

La mayoría también entiende que la aprobación del artículo 4.002(e) de la Ley de la Judicatura de Puerto Rico de 1994, *supra*, constituyó un mecanismo procesal alterno a la acción ordinaria de impugnación para aquella parte que pueda verse afectada por dicha resolución. Por último, sostiene que la protocolización de un testamento ológrafo no es meramente un trámite procesal sino que, en su fondo, goza de esencialidad formal.

Disentimos de la Opinión mayoritaria por entender que la resolución acordando o denegando la adveración y la protocolización de un testamento ológrafo no es revisable. Disentimos, además, porque entendemos que la aprobación de la Ley de la Judicatura de Puerto Rico de 1994, *supra*, no tuvo el propósito de revocar a *Ex Parte Collazo*, supra*, ni de crear otro remedio en ley, adicional a la acción ordinaria de impugnación de un testamento.

I

El recurso instado en el caso de epígrafe solicita la revocación del dictamen del Tribunal de Circuito de Apelaciones mediante el cual dicho foro resolvió que es revisable mediante certiorari una resolución del tribunal de instancia ordenando la adveración y protocolización de un testamento ológrafo, en virtud del artículo 4.002(e) de la Ley de la Judicatura de Puerto Rico de 1994, *supra.* Al así dictaminar, el tribunal apelativo dejó sin efecto la adveración y orden de protocolización autorizada por el tribunal de instancia y ordenó la celebración de una nueva vista de adveración a la que comparezcan tres testigos que conozcan la letra y firma del testador.

No conforme, el peticionario acude ante nos mediante petición de certiorari. Señala que el foro apelativo cometió los siguientes errores:

> "[e]rró el Honorable Tribunal de Circuito de Apelaciones al determinar que la Ley de la Judicatura de 1994 según enmendada le concede competencia para revisar por vía de certiorari una resolución final del Tribunal de Primera Instancia acordando la protocolización de un testamento ológrafo.
>
> Erró el Honorable Tribunal de Circuito de Apelaciones al descartar las determinaciones de hecho del Tribunal de

Primera Instancia y considerar que no se había autenticado debidamente por los testimonios presentados los testamentos ológrafos cuya protocolización se interesaba.

Erró el Honorable Tribunal de Circuito de Apelaciones al considerar un recurso sobre un asunto académico."

II

El artículo 616 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2121, define testamento como:

"[e]l acto por el cual una persona dispone para después de su muerte de todos sus bienes, o de parte de ellos...."

En cuanto al testamento ológrafo, el artículo 627 de nuestro Código Civil, 31 L.P.R.A. sec. 2143, establece que:

"[s]e llama ológrafo el testamento cuando el testador lo escribe por sí mismo en la forma y con los requisitos que se determinan en la sec. 2161 de este título."[9]

Con respecto a la presentación del testamento, el artículo 640 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2164, establece que:

"[l]a persona en cuyo poder se halle depositado dicho testamento deberá presentarlo al Tribunal Superior luego que tenga noticia de la muerte del testador; y no verificándolo dentro de los diez días siguientes, será responsable de los daños y perjuicios que se ocasionen por la dilación.

También podrá presentarlo cualquiera que tenga interés en el testamento como heredero, legatario, albacea o en cualquier otro concepto."

Tras la presentación y prueba del fallecimiento del otorgante, se llevarán a cabo las diligencias relativas a la adveración del testamento ológrafo. Sobre dicho asunto, el artículo 641 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2165, dispone que:

"[p]resentado el testamento ológrafo, y acreditado el fallecimiento del testador, el Tribunal Superior procederá a su lectura en audiencia pública y en día y

---

[9] La citada sección 2161 corresponde al artículo 637 de nuestro Código Civil la cual dispone quiénes pueden otorgar un testamento ológrafo. A esos fines, establece que:
    "[e]l testamento ológrafo sólo podrá otorgarse por personas mayores de edad.
    Para que sea válido este testamento, deberá estar escrito todo y firmado por el testador, con expresión del año, mes y día en que se otorgue.
    Si contuviere palabras tachadas, enmendadas o entre renglones, las salvará el testador bajo su firma."

hora señalados al efecto, dentro del segundo día a más tardar, abriéndolo si estuviere en pliego cerrado, rubricándolo los jueces con el notario en todas las hojas, y comprobando acto continuo su identidad por medio de tres testigos que conozcan la letra y firma del testador, y declaren que no abrigan duda racional de hallarse el testamento escrito y firmado de mano propia del mismo.

A falta de testigos idóneos, o si dudan los examinados, y siempre que el Tribunal Superior lo estime conveniente, podrá emplearse con dicho objeto el cotejo pericial de letras."

Justificada la identidad del testamento, el procedimiento subsiguiente se rige por el artículo 643 del Código Civil, 31 L.P.R.A. sec. 2167, que en lo pertinente establece que:

"[s]i el Tribunal Superior estima justificada la identidad del testamento, acordará que se protocolice, con copia certificada de las diligencias practicadas en los registros del notario que los interesados designen, por el cual se librarán las copias o testimonios que procedan, que constituirán título bastante para la inscripción, total o parcial, en el registro de la propiedad, de los bienes inmuebles en que consista la herencia. Si no hubiese conformidad entre los interesados, o si el notario designado por éstos estuviere incapacitado por alguna de las causas que señala la Ley Notarial, entonces la corte designará libremente un notario que tenga oficina abierta en su distrito.
**Cualquiera que sea la resolución del Tribunal Superior, se llevará a efecto, no obstante oposición, quedando a salvo los derechos de los interesados para ejercitarlos en el juicio que corresponda.**" (Énfasis nuestro.)

En torno a la protocolización de un testamento ológrafo, el artículo 639 de nuestro Código Civil, 31 L.P.R.A. sec. 2163, añade que:

"[e]l testamento ológrafo deberá protocolizarse, presentándolo con este objeto a la sala del Tribunal Superior del último domicilio del testador, o a la del lugar en que éste hubiese fallecido, si el fallecimiento hubiere tenido lugar en Puerto Rico, dentro de cinco años contados desde el día del fallecimiento. Sin este requisito, no será válido."

Sobre el particular, Manresa nos comenta que, mediante la protocolización, el testamento adquiere la cualidad de instrumento público y, por ende, será considerado como la verdadera y legítima

disposición testamentaria del otorgante, hasta tanto no fuere declarada nula o ineficaz, parcial o totalmente.[10]

Así mismo añade que:

> "[p]ero téngase presente que si bien el juez habrá de tomar en consideración dichas observaciones para formar su juicio sobre la identidad del testamento, aunque se hagan con el carácter de oposición, y aunque se formule ésta por escrito, **tal oposición no puede producir en ningún caso el efecto de hacer contencioso el expediente de jurisdicción voluntaria**, ni el de impedir que el juez dicte la resolución que estime procedente otorgando o negando la protocolización del testamento cerrado. Cualquiera que sea esta resolución, ha de llevarse a efecto, no obstante la oposición, **quedando a salvo el derecho de los interesados para ejercitarlo en el juicio que corresponda**, como se ordena en el párrafo 2° del artículo 693. Dicho juicio, para impugnar o sostener la identidad y validez del testamento, habrá de ser, por regla general, el ordinario de mayor cuantía."[11] (Énfasis nuestro.)

---

[10] Manresa y Navarro, *Comentarios al Código Civil Español*, 7ma ed., Madrid, Reus, S. A., 1972, t. V, pág. 694.
[11] *Íd.*, págs. 701-702.

Por su parte, el profesor Vélez Torres manifiesta que:

> "[e]l procedimiento de adveración y protocolización es uno que no impide que cualquier persona interesada en promover la nulidad o inefectividad del testamento, o de alguna de sus cláusulas, lo haga en el correspondiente juicio plenario.
>
> ....
>
> En otras palabras, el hecho de que un tribunal ordene protocolizar un documento como testamento ológrafo conforme dispone el Código no tiene el efecto de afectar posibles derechos de terceros. Estos, si así lo consideran conveniente a sus derechos, pueden reclamar lo que corresponda. Pero tal reclamación no procede en el procedimiento de jurisdicción voluntaria que autoriza el Código con el fin de convertir en público un documento privado que contiene el testamento ológrafo. El procedimiento de jurisdicción voluntaria no es, pues, apelable; no constituye cosa juzgada; no quita ni da derechos, etc. Si alguien no está conforme con lo que, supuestamente, el testador ordena, tiene un recurso: reclamar judicialmente por la vía ordinaria, en juicio adversativo, conforme al procedimiento que autorizan las vigentes reglas de enjuiciamiento civil."[12]

Así también, el tratadista español Manuel Albaladejo sostiene que:

> "[c]omo se ve, de lo expuesto se deduce que el principal fin perseguido por los anteriores trámites, es el de *adverar* el testamento, es decir, certificar o dar por cierto que *realmente procede* DE QUIEN *aparentemente lo otorgó* (lo que se llama también comprobar su *autenticidad o identidad*). Y si se estima testamento verdaderamente procedente de dicha persona, entonces se ordena que se incorpore a un protocolo notarial (que se *protocolice*).
>
> Ahora bien, aunque, en rigor la *adveración* sea sólo la comprobación de que el escrito es de quien se reputa que lo otorgó, y aunque la ley haya contemplado únicamente la constatación de esa procedencia, parece razonable que (por contradictorio que parezca *literalmente*) sea facultad del juez desestimar la *adveración* y no ordenar, consiguientemente, la *protocolización,* si (aunque quede probado que procede de quien se supone lo otorgó) el documento es *evidentemente inválido* como testamento (por ejemplo carece de fecha)."[13] (Bastardillas en el original.)

Posteriormente aclara que aquellos interesados que se opongan al auto afirmando o denegando la protocolización tienen derecho a promover el juicio correspondiente. Sin embargo, excluye la posibilidad de que

---

[12] Vélez Torres, *Curso de Derecho Civil*, 2da ed., San Juan, Revista Jurídica de la Universidad Interamericana de Puerto Rico, 1992, t. IV, vol. III, págs. 68-69.

[13] M. Albaladejo, *Curso de Derecho Civil*, Barcelona, Bosch, 1982, t. V, pág. 230.

éstos puedan recurrir en apelación de dicho dictamen, cuando su argumento esté basado en un aspecto sustantivo, como lo sería la impugnación por nulidad de testamento. Distinto sería si se tratase de un planteamiento puramente procesal[14] -como por ejemplo, la omisión de citar a cualquier familiar del testador con derecho a presenciar la adveración del testamento-, en cuyo caso, las partes podrían acudir al tribunal apelativo. A esos fines discute que:

> "[e]l legislador aquí nos está poniendo de relieve el carácter eminentemente procesal de estas normas dictadas para el testamento ológrafo, diferenciándolas de las contenidas en la Ley de Enjuiciamiento Civil, aplicables al testamento cerrado en cuanto que, por principio, excluye los posibles recursos de reposición, apelación y queja contra el auto que afirma o deniega la protocolización; por ello reputa provisionalmente firme el auto de la decisión judicial y si existe oposición por alguno de los interesados no les reserva otro derecho que el de promover el juicio correspondiente, pero no el de interponer contra la denegación ningún recurso de carácter ordinario; cuestión íntimamente relacionada y que surge como una consecuencia de la naturaleza de jurisdicción voluntaria del expediente de protocolización, en el que no cabe, aunque exista oposición, que se convierta en contencioso; por ello, toda impugnación se tramitará por medio de un nuevo procedimiento que interpondrán los interesados en la sucesión. Tema distinto será si aquélla se refiere a posibles infracciones de procedimiento cometidas en la tramitación del expediente, en cuyo caso sí se aplicará para ella lo dispuesto en la Ley de Enjuiciamiento Civil."[15]

Ahora bien, el artículo 598 del Código de Enjuiciamiento Civil de Puerto Rico, 32 L.P.R.A. sec. 2591, dispone lo siguiente en cuanto a las acciones para determinar la validez de un testamento:

> "[c]uando se impugnare la validez de un testamento, por haberse dejado de cumplir algunas de las formalidades exigidas por la ley o carecer el testador de capacidad para testar, aléguese o no la existencia de otro válido de fecha posterior o anterior, **podrá promoverse juicio por cualquier heredero, o por un albacea o legatario designado en el testamento cuya validez se intenta probar, al objeto de averiguar si el finado dejó testamento válido y en tal caso determinar el documento en que se halla consignada su última voluntad.**" (Énfasis nuestro.)

---

[14] Las normas procesales no tienen vida propia. Su propósito es viabilizar la consecusión del derecho sustantivo de las partes. *Núñez González* v. *Jiménez Miranda*, 122 D.P.R. 134, 144 (1988).

[15] M. Albaladejo, *Comentarios al Código Civil y Compilaciones Forales*, Madrid, Editoriales de Derecho Reunidas, 1990, t. IX, vol. 1-A, pág. 482.

Por su parte, el inciso (e) del artículo 4.002 de la Ley de la Judicatura de Puerto Rico de 1994, *supra*, establece lo siguiente en torno a la competencia del Tribunal de Circuito de Apelaciones para revisar resoluciones del Tribunal de Primera Instancia en casos de jurisdicción voluntaria:

> "[m]ediante auto de *certiorari* expedido a su discreción, revisará las resoluciones finales en procedimiento [sic] de jurisdicción voluntaria, dictadas por el Tribunal de Primera Instancia, incluyendo el Tribunal de Distrito durante el proceso de su abolición. En estos casos, el recurso de *certiorari* se formalizará presentando una solicitud a tales efectos dentro de los treinta (30) días siguientes al archivo en autos de copia de la notificación de la resolución. Este término es jurisdiccional.
> La presentación de una moción de reconsideración producirá en cuanto al término para solicitar un *certiorari* bajo este inciso, el mismo efecto provisto por las Reglas de Procedimiento Civil para los recursos de apelación."(Bastardillas en el original.)

Habida cuenta del carácter no contencioso de los procedimientos de jurisdicción voluntaria, la Regla 42.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que:

> "[e]l tribunal tendrá facultad para conocer de procedimientos de jurisdicción voluntaria, *ex parte*, que son todos aquellos en que sea necesario, o se solicite, la intervención del juez, sin estar empeñada ni promoverse cuestión alguna entre partes conocidas y determinadas, siempre que tenga jurisdicción sobre la materia." (Bastardillas en el original.)

En *Ex Parte Collazo,* supra, se suscitó por primera vez la interrogante de si era o no apelable una resolución del Tribunal de Distrito de Arecibo ordenando la protocolización de un testamento ológrafo epistolar. Allí sostuvimos que la resolución de un tribunal de distrito acordando o denegando la protocolización de un testamento ológrafo no es apelable. Sobre el particular resolvimos que:

> "[n]i las partes han citado ni nosotros hemos podido encontrar decisión alguna de esta Corte que resuelva directamente la cuestión planteada, pero el razonamiento en el caso de *Solá v. Solá*, 30 D.P.R. 758 [1922] parece aplicable para sostener que la apelación no existe."[16] (Bastardillas en el original.)

---

[16] Huelga indicar que en *Solá v. Solá,* supra, dispusimos que contra una resolución poniendo término a un expediente de incapacidad, no cabe

Allí también aclaramos que, aun cuando nuestro ordenamiento no provee para que la protocolización de un testamento ológrafo sea apelable, las personas que pudieran verse afectadas por tal determinación pueden hacer valer sus derechos mediante un juicio ordinario. Así, pues, expresamos que:

> "[a]sí sucede en este caso de la protocolización. Es cierto que la medida tiene gran importancia. Ya hemos visto que por disposición expresa de la ley las copias constituirán título bastante para la inscripción, total o parcial, en el registro de la propiedad, de los bienes inmuebles en que consista la herencia, pero está limitada también expresamente por la ley al reconocimiento de la autenticidad inmediato [sic] del documento, quedando a salvo los derechos de las personas a quienes pudiera perjudicar que deberán hacerlos valer en el juicio correspondiente."

A esos mismos fines citamos a *Vázquez v. Vázquez*, 34 D.P.R. 241, 246 (1925), donde resolvimos que:

> "[p]or otra parte, como la protocolización de un testamento ológrafo es más bien un acto de jurisdicción voluntaria y la resolución que ordenando la protocolización se dicte no produce el efecto de cosa juzgada, el derecho de los herederos forzosos que puedan existir o de las personas que se crean perjudicadas queda a salvo para recurrir al juicio ordinario."[17]

A la luz de los principios esbozados, disentimos de la Opinión mayoritaria.

III

En el presente caso, la recurrida impugnó ante el tribunal apelativo la idoneidad de los testigos que comparecieron a la vista de adveración de los testamentos en cuestión. Por ser ello un planteamiento sustantivo, no es revisable.

La mayoría de este Tribunal incide al concluir que, al amparo del artículo 4.002(e) de la Ley de la Judicatura de Puerto Rico de 1994, *supra*, la adveración y protocolización de un testamento ológrafo es un procedimiento de jurisdicción voluntaria revisable mediante certiorari.

---

recurso de apelación; no obstante el derecho de los interesados de presentar demanda ordinaria.
[17] Véase, además, *Blanch v. Registrador*, 59 D.P.R. 730, 736 (1942).

Además, incide al sostener que la aprobación de la citada ley dejó sin efecto lo resuelto en *Ex Parte Collazo,* supra.

Por último, la Opinión mayoritaria erróneamente resuelve que la parte que pueda verse afectada por la resolución aceptando o denegando la protocolización de un testamento tiene dos remedios, a saber: la acción ordinaria de impugnación de testamentos y el recurso discrecional de certiorari, al amparo del artículo 4.002(e) de la Ley de la Judicatura de Puerto Rico de 1994, *supra*. Discrepamos de dicha interpretación. Ciertamente, la adveración y orden de protocolización de un testamento ológrafo no es el tipo de procedimiento de jurisdicción voluntaria que admite revisión por un foro apelativo. El remedio disponible a la parte recurrida es el de promover la nulidad o inefectividad de los testamentos en cuestión mediante un juicio ordinario, al amparo del artículo 643 del Código Civil de Puerto Rico, *supra*.

La conclusión de la mayoría de que la Ley de la Judicatura de Puerto Rico de 1994, *supra,* dejó sin efecto lo resuelto en *Ex Parte Collazo,* supra, no se justifica. Del Informe Conjunto de las Comisiones de lo Jurídico Civil y de Gobierno de la Cámara de Representantes de 24 de octubre de 1995, *supra*, no surge tal intención legislativa. Se trata de una ley general que no derogó expresamente lo dispuesto en el artículo 643 del Código Civil de Puerto Rico, *supra*, ni lo resuelto en *Ex Parte Collazo,* supra.

Por las razones que anteceden, disentimos de la Opinión mayoritaria por entender que el Tribunal de Circuito de Apelaciones actuó sin jurisdicción al expedir el auto y ordenar la celebración de una nueva vista de adveración a la que comparezcan tres testigos que conozcan tanto la letra como la firma del testador. Así, pues, resulta innecesario entrar a discutir los otros dos señalamientos de error.

Por los fundamentos esbozados, revocaríamos el dictamen del Tribunal de Circuito de Apelaciones de 31 de agosto de 1998, dejando en vigor, por inapelable, la Resolución del Tribunal de Primera Instancia

de 3 de abril  de 1998, sin perjuicio de los derechos de la recurrida, a

hacerlos valer en el juicio que corresponda.


                                        BALTASAR CORRADA DEL RIO
                                             Juez Asociado