RAMONA RÍOS, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE MAYAGÜEZ, recurrido.

Núm. 1080.—*Sometido:* Diciembre 10, 1940. *Resuelto:* Diciembre 13, 1940.

*José Sabater,* abogado de la recurrente; el registrador recurrido compareció por escrito.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

En el Registro de la Propiedad de Mayagüez se presentó para su inscripción la escritura de testamento otorgada ante el notario Amadeo Nazario Lugo el 21 de septiembre de 1922 por Eusebio de la Rosa y Ramona Ríos y Méndez contentiva entre otras de las siguientes cláusulas:

"*Tercero:* Que se encuentran ambos en sus plenas facultades mentales, y yo, el Notario hago constar que antes de proceder a efectuar este testamento examino a los testadores y están con su mente despejada, su imaginación clara y en todas sus facultades mentales no estando impedidos por ningunas de las prevenciones que determina la ley.

"*Cuarto:* Que es la voluntad de los testadores que cualquiera que fallezca primero sea heredero de todos los bienes que pudieran tener a su fallecimiento el cónyuge superviviente, para que como tal heredero legal del fallecido se apodere del caudal del fenecido, y actúe y obre como dueño inmediato al fallecimiento de cualquiera de ellos,

y que es la voluntad de los testadores que el heredero que resultara ser esté exento de fianzas e intervenciones judiciales, concediendo amplias facultades al heredero superviviente para que una vez fallecido cualquiera de ellos, se incaute de todo sin intervenciones particulares de nadie, y que cualquiera que sea el superviviente, continúe el disfrute del caudal dejado como dueño subsiguiente y que se disfrute de todo con la bendición de Dios, y el cariño del fenecido.''

Se acompañaron a la escritura un recibo del pago de la contribución sobre la herencia de Eusebio de la Rosa fallecido en Mayagüez en febrero de 1937, el acta de su defunción y otra escritura titulada ''Ratificación de Testamento'' otorgada ante el notario José Sabater en octubre 16, 1940, por Juan Mari, Arturo González y Augusto Ortiz testigos que fueron del testamento de septiembre 21, 1922, por virtud de la cual trataron de suplir ciertos datos que se estimaron necesarios para la validez de dicho testamento.

El registrador se negó a practicar la inscripción solicitada por medio de la siguiente nota:

''DENEGADA la inscripción de este testamento con vista de otros documentos complementarios y tomada en su lugar la correspondiente anotación preventiva por el término legal al folio 120 vuelto del tomo 171 de Mayagüez, finca número 4926, anotación letra A, por observarse que en el referido documento no se expresa la hora del otorgamiento del mismo ni que por lo menos dos de los testigos conocieran al testador sin que tampoco se exprese que al juicio del notario y testigos el testador tenía capacidad legal para testar, defectos insubsanables éstos que pretenden subsanarse mediante la escritura número ciento ochenta y cinco otorgada en Mayagüez, a diez y seis de octubre actual, ante el notario José Sabater y García, lo cual no procede toda vez que el testamento debe ser otorgado en un solo acto, todo según lo determina nuestro Código Civil vigente, y por observarse además que el referido testamento es mancomunado y por tanto nulo de acuerdo con lo dispuesto por el artículo 618 del citado cuerpo legal.''

No conforme la señora Ríos interpuso, por su abogado el presente recurso gubernativo.

██ Consideraremos primero la cuestión de nulidad que es la fundamental envuelta en el recurso.

El artículo 618 de nuestro Código Civil, ed. 1930, es terminante. Dice:

"No podrán testar dos o más personas mancomunadamente, o en un mismo instrumento, ya lo hagan en provecho recíproco, ya en beneficio de un tercero."

Es igual al 669 del viejo Código—Código Civil Español—comentando el cual dice Manresa:

"En la reseña histórica que hicimos en la introducción con que encabezamos el estudio del tratado de sucesiones, quedó expuesta ya la doctrina mantenida por nuestro antiguo derecho acerca de los testamentos mutuos, de mancomún o de hermandad, a que se refiere el precepto de este artículo, y no es necesaria mayor exposición, toda vez que se trata de una forma de testar que con plausible acierto y con razón sobrada ha desaparecido, a partir de la publicación del Código.

"Admitida por el Fuero Real (Ley 9ª., tít. VI, libro III), pero sólo entre marido y mujer que no tuvieren sucesión, las Partidas declaráronla nula y sin valor ninguno, para que ninguno de los otorgantes *non aya ocasión de trabajar de muerte del otro por razón de heredarle lo suyo* (Ley 35, tít. XI de la partida 5ª.) ; reservándola, sin embargo, en favor de los que fueren caballeros y hubieran de entrar en batalla o en alguna *hazienda;* pero el uso extendió y autorizó tan profusamente su empleo, que el abuso hizo conocer bien pronto los inconvenientes que en la práctica ofrecía, por las cuestiones y litigios que frecuentemente originaba.

"Estos testamentos, mezcla informe de disposición *mortis causa* y de contrato, como en ocasión solemne le llamara un profesor distinguido, eran incompatibles con el principio de la revocabilidad esencial en materia de sucesión testada, y escasísimas ventajas podían ofrecer a cambio de los muchos inconvenientes que producían, por la confusión posible de los patrimonios, por la falta de espontaneidad de alguno de los otorgantes y por los peligros de fáciles sugestiones, y aun de evidentes captaciones, especialmente en los otorgados entre marido y mujer, en que a menudo solía haber una víctima de la seducción y del engaño.

"La ciencia condena el procedimiento, y no faltaron Notarios entendidos que se negaron a autorizar tales actos, instruídos por la ex-

periencia de que el cónyuge más enérgico imponía de ordinario su voluntad o su capricho al más débil, faltando así en alguno de los otorgantes la necesaria libertad para disponer de sus bienes por el predominio que el otro ejerciera en su ánimo.'' 5 Manresa, Comentarios al Código Civil Español, 392, 393, Quinta edición.

Y es también esencialmente igual al 3618 del Código Civil Argentino, respecto del cual dice el comentarista Antokoletz en el tomo segundo, página 911 de su obra ''Código Civil,'' lo que sigue:

''Art. 3618.—Cód. Francés, art. 968.—De Luisiana, 1566.—Napolitano, 893.—Holandés, 977.—En contra, L. 9, Tít. 6, Lib. 3, Fuero Real.—Véase Coin Delisle, sobre el artículo del Cód. Francés. El testamento esencialmente libre, esencialmente dependiente de la voluntad ambulatoria de su autor, no puede ser hecho en el mismo acto por muchas personas. Un acto formado por el concurso de muchas voluntades no puede en general ser cambiado o modificado sino por el concurso de todas sus voluntades; y, por otra parte, la disposición testamentaria libre e independiente en su principio, debe permanecer esenciälmente revocable a voluntad de su autor. De aquí han nacido numerosas dificultades y la divergencia de la jurisprudencia sobre la aplicación que se debía hacer del principio de revocabilidad, durante la vida de los testadores, o después de la muerte de uno de ellos.

''La prohibición comprende únicamente el testamento hecho por varias personas en el *mismo* acto. Ningún impedimento hay para que dos o más personas convengan en disponer, cada una por su parte, a favor de un tercero o a favor del uno y del otro; pero cada uno queda entonces legalmente dueño de revocar su testamento cuando le parezca conveniente.

''Se ha objetado a favor de los testamentos recíprocos las disposiciones sobre las donaciones mutuas. Pero puede decirse que el legislador debe exigir una voluntad más plena y más libre de parte del testador, que la que exige del donante. El temor de una sorpresa es menos grande cuando se trata de despojarse actual o irrevocablemente de una parte de los bienes, que cuando se dispone de ellos para un tiempo en que la vida haya acabado.

''El testador es más accesible a las seducciones que no tienen un efecto actual, que el donante que siempre será contenido de desprenderse de lo suyo sin poderse arrepentir. El primero es más fácil en

sus liberalidades, porque no debe ver sus consecuencias; el segundo es más reservado por el sentimiento que inspira la desapropiación de los bienes. Véase Demante, tom. 4 n° 113 bis.—Marcadé, Troplong y Coin Delisle, sobre el art. 968.''

Véanse además ''Concordancias y Comentarios del Código Civil Argentino'' por el Dr. Baldomero Llerena, Buenos Aires, 1931, tomo noveno, página 586, y ''El Código Civil de la República Argentina con su explicación y crítica bajo la forma de notas hechas por el Dr. Lisandro Segovia'', Buenos Aires, 1933, página 590.

Nada precisa añadir. Apareciendo de la faz de la escritura la nulidad del testamento por haberse otorgado en contra de precepto imperativo de la ley, estuvo justificado el registrador al negarse a inscribirlo en los libros a su cargo.

El caso de *Vázquez* v. *Vázquez*, 34 D.P.R. 241 que invoca la recurrente, no tiene aplicación. Lo que en él se resolvió fué que: ''Revisten el carácter de testamento ológrafo palabras que, contenidas en una carta familiar que reúne los requisitos todos del artículo 696 del Código Civil, indican la intención deliberada que tuvo su autor de disponer por ellas de sus bienes para después de su muerte.'' No se trataba de un testamento mancomunado.

En cuanto a si existían o no los defectos apuntados por el registrador y a si se pudieron o no subsanar en la forma en que se trató de hacerlo por la escritura de octubre 16, 1940, nada es necesario resolver, porque el testamento, siendo nulo en su origen por haber sus otorgantes actuado en contra de la ley, no podía ser convalidado por los testigos. La escritura suplementaria carece de fuerza decisiva alguna.

No procede el recurso. *Debe confirmarse la nota recurrida.*