# 2006 DTA 118

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE CAROLINA**
**PANEL XI**

REBECA LARACUENTE
Demandante-Recurrida

v.

FREDERIC CHARDON DUBOS
Demandado-Peticionario

Núm. KLCE-2006-01002

San Juan, Puerto Rico, 26 de septiembre de 2006

Panel integrado por su Presidente, el Juez Ortiz Carrión,
y las Juezas Feliciano Acevedo y Fraticelli Torres

Fraticelli Torres, Jueza Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

La petición de *certiorari* presentada por el peticionario Frederic Chardon Dubos cuestiona si el Tribunal de Primera Instancia puede suspender y continuar la vista de adveración y protocolización de un testamento ológrafo en fecha posterior, con el único propósito de recibir el testimonio de un tercer testigo sobre la autenticidad de la letra y de la firma de la testadora, luego de concluir que uno de los testigos citados e interrogados con ese propósito sólo pudo adverar su firma, pero no la letra. El heredero peticionario nos pide la anulación de los procesos y la revocación de la resolución que ordenó la adveración y protocolización del testamento ológrafo de su señora madre, por esa alegada irregularidad procesal y porque el testamento se protocolizó antes de concluir todo el procedimiento de rigor y de emitirse la resolución final que declarara la adveración del testamento y ordenara su protocolización.

Luego de evaluar los argumentos de la parte peticionaria, de examinar los autos originales para entender las incidencias que tuvieron lugar en el tribunal *a quo* para la adveración y protocolización del testamento ológrafo de la señora Yveline Dubos Nocciolini, y de atender a la naturaleza particular de tal procedimiento, resolvemos expedir el auto solicitado para modificar la resolución recurrida.

**I**

El 11 de febrero de 2002, la señora Rebeca Laracuente presentó una petición para adverar y protocolizar el testamento ológrafo de la señora Yveline Dubos Nocciolini, quien murió el 5 de febrero de 2002. El testamento ológrafo tiene fecha de 18 de agosto de 2001 y aparece escrito en español a puño y letra de una persona. La señora Laracuente era la depositaria del testamento y es legataria del tercio de libre disposición de la herencia de la señora Dubos Nocciolini. Citada la primera audiencia para iniciar los procedimientos, la vista fue suspendida, luego de anunciarse los testigos que adverarían la letra y la firma de la testadora. El tribunal *a quo* permitió al peticionario, quien es hijo de la testadora y heredero de la legítima estricta de su caudal, que presentara prueba pericial para impugnar la autenticidad del testamento, si así lo interesaba. El foro autorizó que su perito tuviera acceso al documento para la realización de las pruebas periciales. Igual oportunidad se dio a la señora Laracuente, quien es la parte recurrida en la petición de autos. Tales pruebas nunca se realizaron.

El 14 de agosto de 2002, el Tribunal de Primera Instancia, Sala Superior de Carolina, celebró la vista de adveración y protocolización del testamento ológrafo de la señora Dubos Nocciolini. Iniciados los procesos de rigor, el tribunal recibió los testimonios de la Sra. Rebeca Laracuente, del Lcdo. Roberto Montalvo Calvia, del Sr. Ricardo Paleo Rodríguez y del Sr. Roberto Webster Carrillo. Los dos primeros testigos afirmaron con certeza que la letra y la firma del documento correspondían a la causante Yveline Dubos Nocciolini. El señor Paleo Rodríguez, sin embargo, sólo pudo adverar la firma de la causante. ■ El testimonio del señor Webster Carrillo constituyó prueba acumulativa sobre la autenticidad de la firma de la testadora, no de la veracidad de su letra. ■

Terminada la vista, el peticionario argumentó que sólo dos testigos pudieron adverar la letra y la firma de la testadora, por lo que *"no se ha[bía] cumplido con la formalidad solemne que requiere la ley y la jurisprudencia para proceder a darle la certeza de que ese escrito fue hecho de puño y letra en su totalidad por la causante Yveline Dubos"*. (Autos originales, transcripción de la vista, pág. 62.) La parte recurrida, como promovente de ese procedimiento, argumentó que los tres testigos no tenían que adverar por separado que la letra y la firma eran de la testadora. Señaló que bastaba *"con el cúmulo presentado de evidencia completa que [el tribunal] pueda juzgar en su día y sentirse satisfecho y convencido de que tanto la letra como la firma fueron identificadas por los diferentes testigos"*. En ese momento, según surge de la minuta del día, el tribunal dirimió la controversia sobre la suficiencia de la prueba presentada y resolvió lo siguiente:

*"El Tribunal tiene bien claro de que la ley como explica la compañera solamente en el sentido de que deben haber tres testigos. Lo que pasa es que la credibilidad no hay que otorgársela a todos los testigos que se sienten ahí. Por lo tanto, el Tribunal en este caso a base del desfile de la prueba no requiere ni un perito calígrafo si ve dentro del concepto del [demeanor] del testigo inclusive. No solamente las palabras, la certeza de que la mano que movió esa tinta en ese documento fue precisamente la [de la] causante. Y así lo entiende este Tribunal y declara que ese documento es un documento que hay que protocolizar y en este momento le damos la adveración al documento y se ordena la protocolización. (Sic)"*

Autos originales, transcripción de la vista, pág. 64.

En la misma vista, el juez rubricó el testamento junto al notario Lcdo. Wilfredo R. Picorelli Osorio, a quien ordenó la protocolización. Posteriormente, el 3 de octubre de 2002, este notario informó al tribunal que había *"recibido la transcripción de lo actuado en la vista"* y solicitó que se le entregara el testamento original y un diario a manuscrito de la testadora, para unirlos a la escritura de protocolización, según acordado por las partes. El 17 de octubre de 2002, notificada el 25 del mismo mes y año, el tribunal emitió una orden a la Secretaria para que entregara al notario los documentos solicitados. Así lo hizo esta funcionaria el 21 de noviembre siguiente, de cuya entrega hay constancia en los autos originales.

Después de los recibos de esta entrega, lo que aparece en los autos originales es la primera petición de *certiorari* que el peticionario presentó ante nos el 25 de noviembre de 2002, contra la determinación de adveración y protocolización hecha en corte abierta. ■ No olvidemos que el tribunal *a quo* no había emitido una resolución para declarar la adveración y la protocolización del testamento de doña Yveline Dubos, como correspondía, ni notificó a las partes la minuta que recogía su determinación de así hacerlo. Al recurrir ante nos con el recurso KLCE-2002-01294, el peticionario sólo incluyó la susodicha orden de entrega del testamento al notario. Un panel hermano denegó la petición porque, no habiéndose dictado ni notificado a las partes la resolución que declaraba la adveración y protocolización del testamento, el recurso era prematuro. Nuestra resolución tiene fecha de 11 de diciembre de 2002, pero fue notificada a las partes el 18 de diciembre siguiente, entre ellas, al señor notario. **Ese mismo día**, 18 de diciembre de 2002, el Lcdo. Picorelli Osorio autorizó la escritura núm. 198 sobre Acta de Protocolización de Testamento Ológrafo de doña Yveline Dubos Nocciolini.

De modo insólito, luego de todos los incidentes procesales y actos notariales que hemos descrito, el 10 de febrero de 2003, el tribunal recurrido dictó una Resolución Interlocutoria en la que expresó que sólo dos testigos habían adverado la letra de la testadora, aunque tres lo hicieron sobre la firma. Concluyó que *"falta un testigo adicional que pueda determinar si la letra del testamento pertenece a la Sra. Yveline Dubos"*. Hizo constar en esa resolución que la Procuradora de Relaciones de Familia favoreció la adveración del testamento con la prueba presentada en esta primera vista. El tribunal ordenó la citación de un tercer testigo que pudiera declarar sobre la autenticidad de la letra de la señora Dubos Nocciolini, como lo exigía la ley. Señaló la vista para el 4 de abril de 2003.

Posteriormente, el caso fue reasignado a otra sala. Luego de la posposición del señalamiento para la

continuación de la vista, un nuevo juez emitió la siguiente resolución:

*"[...] Se informa a las partes que este caso se ha reasignado a la Sala 408 del Tribunal. A tenor con lo dispuesto en la Resolución Interlocutoria dictada el 10 de febrero de 2003 por el Hon. Etienne Badillo Anazagasty, y para el propósito allí especificado, se transfiere la continuación de la vista de adveración para el 6 de mayo de 2003 a las 2:00 p.m. El Tribunal otorga pleno vigor, crédito y vinculación jurídica a las determinaciones y conclusiones formuladas en la Resolución Interlocutoria de 10 de febrero de 2003. El Tribunal, por voz del Juez Badillo, se ocupó de formular por escrito unas determinaciones interlocutorias pendientes de la presentación del tercer testigo idóneo. No es necesario volver a desfilar la misma prueba que ya desfiló. Por lo tanto, la continuación de la vista de adveración se limitará a escuchar el testimonio de un tercer testigo idóneo que pueda identificar la letra y la firma de la causante. De completarse la prueba de adveración, se autorizará al notario a protocolizar el testamento ológrafo. [...]."*

Énfasis nuestro. Resolución de 12 de marzo de 2003.

La vista en cuestión se celebró el 25 de noviembre de 2003, luego de varias suspensiones. Según la minuta de los procedimientos celebrados ese día, se recibió el testimonio de dos testigos, la señora Miriam García y el Lcdo. Amílcar Velázquez, quienes adveraron la letra de la testadora. La abogada del peticionario impugnó la validez del proceso por el hecho de la protocolización previa y por la suspensión y la continuación de la vista original para recibir el testimonio de nuevos testigos. El tribunal le apercibió que debía presentar un perito caligráfico para impugnar la letra del testamento y le concedió 20 días para presentar un memorando de derecho sobre el hecho de la protocolización precoz. El tribunal manifestó, sin embargo, que *"no hay razón para impugnar el que se haya protocolizado el documento antes de completar un fragmento del procedimiento"* y que *"la integridad del testamento ológrafo ha estado salvaguardad[a] en todo momento"*. Se ordenó la transcripción de los procedimientos y la notificación al notario que había protocolizado el testamento prematuramente. El caso quedó pendiente de los escritos que debían someter los abogados, lo que hicieron. El tribunal solicitó a la parte promovente y recurrida un proyecto de resolución que nunca llegó al juzgador.

Luego de un período de inacción de las partes y del propio tribunal, ▮ el 24 de mayo de 2006, el Tribunal de Primera Instancia dictó la siguiente resolución final, que en lo pertinente, dispone:

*"Una vez presentada la petición de epígrafe y notificadas las partes interesadas, se celebraron audiencias judiciales el 20 de mayo de 2002 y el 14 de agosto de 2002. Como resultado de lo actuado, específicamente de la vista de adveración celebrada el 14 de agosto de 2002, el tribunal dictó una 'Resolución Interlocutoria' el 10 de febrero de 2003 por voz del Hon. Etienne C. Badillo Anazagasty. Dicha resolución se explica por sí misma. Notificada la Resolución Interlocutoria el 13 de febrero de 2003, se señaló la continuación de la vista de adveración a los fines limitados allí indicados."*

Mediante Orden del 12 de marzo de 2003, el tribunal resolvió que se otorgaba pleno vigor, crédito y vinculación jurídica a las determinaciones y las conclusiones formuladas en la Resolución Interlocutoria el 10 de febrero de 2003.

A la vista celebrada el 25 de noviembre de 2003 para presentar un tercer testigo idóneo para adverar el Testamento Ológrafo de quien en vida fuera Yveline Dubos Nocciolini, compareció el Lcdo. Luis Alberto Rivera Rivera en representación de la peticionaria, Lcda. Blanca Ruperto Morales en representación de los nietos de la causante, la Migdalia Torres Díaz en representación de Frederick Chardón. El Lcdo. Wilfredo Picorelli Osorio compareció como Notario del Acta de Protocolización del Testamento Ológrafo. También compareció la licenciada Norma R. Brignoni en representación del Ministerio Público.

En dicha vista testificaron el Lcdo. Amílcar Velázquez y la señora Miriam García. Ambos testigos

identificaron plenamente la letra y la firma de la causante, luego de prestar juramento, y luego de examinar con detenimiento el documento presentado ante este tribunal como testamento ológrafo de Yveline Dubos Nocciolini.

Este tribunal hace constar que hubo participación activa por las partes presentes en cuanto a realizar preguntas a los testigos. El señor Frederick Chardón, representado por la Lcda. Migdalia Torres, participó en el examen de los testigos y se le concedió el derecho a ser oído.

Luego de concluido el desfile de prueba, la Lcda. Torres solicitó término para someter Memorando de Derecho lo cual se le concedió. La parte peticionaria y el Notario sometieron sus respectivas mociones.

Previa revisión de los autos, el tribunal concluye que se han cumplido con todos los requisitos que establece el Código Civil de Puerto Rico para el procedimiento y adveración de Testamento Ológrafo, según dispone el Artículo 641 de dicho código; y habiéndose identificado a satisfacción del tribunal la letra y la firma de Doña Yveline Dubos Nocciolini, el tribunal estimó justificada la identidad del Testamento Ológrafo, el cual fue escrito de puño y letra de la causante el 18 de agosto de 2001 y así lo dictaminó en corte abierta. **El tribunal ratifica todos los procedimientos y actuaciones previas por el Juez Etienne C. Badillo Anazagasty y por el Notario Wilfredo R. Picorelli Osorio.**

Como consecuencia de lo anterior, se designó y se autorizó al licenciado Wilfredo R. Picorelli Osorio para la protocolización del Testamento Ológrafo de la causante. El Lcdo. Picorelli unió permanentemente a su protocolo el Testamento Ológrafo adverado, en cumplimiento con las disposiciones del Código Civil de Puerto Rico.

Énfasis nuestro. Resolución de 24 de mayo de 2006.

Tal es la resolución impugnada en el recurso de autos.

El peticionario señala que erró el tribunal *a quo "al no declarar nulo el alegado testamento ológrafo"*. Argumenta que el tribunal recurrido no tenía discreción para suspender la primera audiencia, en la que sólo dos de los cuatro testigos presentados adveraron la identidad de la letra, y citar a un tercer testigo, a menos que fuera para el cotejo pericial de la letra de la testadora. ██ Aduce, además, que la audiencia para recibir estos testimonios no se celebró en el segundo día y que no fue *"un acto continuo"*, ya que participaron dos jueces en la adjudicación del asunto.

## II

De entrada, es menester señalar que el procedimiento impugnado es de jurisdicción voluntaria y no admite propiamente una apelación de la resolución que dispone del asunto. La Ley de la Judicatura, sin embargo, permite al foro apelativo revisar la resolución dictada en este tipo de proceso mediante el recurso discrecional de *certiorari*. Ley Núm. 201 de 22 de agosto de 2003, Art. 4.006(b), 4 L.P.R.A. 24y; Reglamento del Tribunal de Apelaciones, **2004 J.T.S. 112**, R. 32 (C).

Nuestra función apelativa en estos casos se limita a constatar si se realizaron los trámites procesales indispensables descritos en el Artículo 551A del Código de Enjuiciamiento Civil para la adveración del testamento y su posterior protocolización. Claro está, en esa gestión judicial debemos mostrar deferencia a los parámetros discrecionales reconocidos al Tribunal de Primera Instancia en tales procesos.

A base de lo alegado, el primer asunto que debemos atender atañe a la propia naturaleza del procedimiento de jurisdicción primaria cuestionado ante nos. Sólo así podemos determinar si este recurso sirve al propósito deseado por el peticionario, que es lograr la anulación del testamento impugnado por el desvío de las formalidades exigidas en este proceso.

El procedimiento para adverar y protocolizar un testamento ológrafo estaba regulado por los artículos 639 a 643 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 2163-2167, pero, mediante al Ley Núm. 212 de 9 de agosto de 1998, se derogaron los artículos 641 a 643 y su contenido se adoptó como el Artículo 551A de la Ley de Procedimientos Legales Especiales o antiguo Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2280a, que, en lo pertinente provee:

Art. 551A. Procedimiento para la protocolización de testamentos ológrafos.

*"(1) Procedimiento después de la presentación y prueba de fallecimiento. Presentado el testamento ológrafo y acreditado el fallecimiento del testador, el Tribunal de Primera Instancia procederá a su lectura en audiencia pública y en día y hora señalados al efecto, dentro del segundo día a más tardar, abriéndolo si estuviere en pliego cerrado, rubricándolo los jueces con el notario en todas las hojas y* **comprobando acto continuo su identidad por medio de tres (3) testigos que conozcan la letra y firma del testador y declaren que no abrigan duda racional del hallarse el testamento escrito y firmado de mano propia del mismo.**

**A falta de testigos idóneos, o si dudan los examinados, y siempre que el Tribunal de Primera Instancia lo estime conveniente, podrá emplearse con dicho objeto el cotejo pericial de letras.**

*(2) Citación del cónyuge y familiares. [...]*

*Los citados podrán presenciar la práctica de dichas diligencias y hacer en el acto, de palabra, las observaciones oportunas sobre la autenticidad del testamento.*

*(3) Procedimiento después de justificada la identidad del testamento. Si el Tribunal de Primera Instancia estima justificada la identidad del testamento, acordará que se protocolice, con copia certificada de las diligencias practicadas en los registros del notario que los interesados designen...*

*[...]*

**Cualquiera que sea la resolución del Tribunal de Primera Instancia, se llevará a efecto, no obstante oposición, quedando a salvo los derechos de los interesados para ejercitarlos en el juicio que corresponda."**

[Énfasis nuestro.] Código de Enjuiciamiento Civil, Art. 551A, 32 L.P.R.A. sec. 2280.

Esta disposición reproduce textualmente en sus tres apartados (a), (b) y (c) los tres artículos aludidos del Código Civil, respectivamente, por lo que la doctrina y la jurisprudencia que interpretaron tales preceptos cuando formaban parte del código les son igualmente aplicables en su nueva ubicación. Coinciden la doctrina y la jurisprudencia en que, cumplidas las exigencias que dicta la ley, según lo determine el foro judicial en el ejercicio de su amplia discreción, sólo procede declarar la adveración y ordenar la protocolización del testamento. Cualquier objeción contra la validez o eficacia del testamento tiene que darse en un juicio plenario. *Vázquez v. Vázquez*, 34 D.P.R. 241, 246 (1925), seguido en *Cabassa v. Corte*, 47 D.P.R. 372, 389-390 (1934); y *Ab Intestato Lugo Rodríguez*, 151 D.P.R. 572, 580-581 (2000). Esto es así porque la protocolización no prejuzga cuestión alguna relativa a la validez o eficacia del testamento o a los derechos sucesorios de los herederos, por lo que no constituye cosa juzgada sobre tales cuestiones. Tal es la interpretación dada al unísono por la doctrina y la jurisprudencia al último párrafo del Artículo 551A del Código de Enjuiciamiento Civil, ya·citado: *Cualquiera que sea la resolución del Tribunal de Primera Instancia, se llevará a efecto, no obstante oposición, quedando a salvo los derechos de los interesados para ejercitarlos en el juicio que corresponda. Id.*

Al evaluar lo acontecido en el caso de autos, concluimos que la celebración de varias vistas para recibir la prueba testimonial necesaria para adverar el testamento no trastoca la naturaleza del procedimiento ni mancha de

nulidad la determinación fundada en la apreciación que hicieron los dos jueces sucesivos de la prueba oral recibida. Carece, pues, de validez el argumento de la parte peticionaria relativo a que los tres testigos tenían que interrogarse en la misma vista, en acto continuo, sin interrupción y que un segundo juez no podía sustituir al primero, quien se acogió a su jubilación.

No se trata en este caso del otorgamiento de un testamento ante notario, donde el acto único es requisito de forma indispensable. Véase, Art. 649, Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2186. Se trata de un asunto ventilado ante un tribunal, que tiene facultad inherente para organizar los procesos y recibir la prueba pertinente para la disposición final de cualquier controversia.

Cuando el primer juez atendió el asunto, señaló la continuación de la vista para recibir un testimonio adicional, ya que uno de los testigos presentados con el fin de adverar la letra y firma de la testadora, pudo hacerlo respecto a la firma, pero no pudo declarar que no abrigaba duda racional alguna sobre la identidad de la letra. No es ésta la situación en la que la parte que inició el proceso de jurisdicción voluntaria llegó con una prueba incompleta o impertinente, huérfana de remedio.

Según las minutas y las resoluciones dictadas por los jueces que presidieron las vistas, al terminar de pasar la prueba testimonial en la primera audiencia, uno de los testigos llamados con ese fin no pudo atestiguar sobre la autenticidad de la letra, aunque sí de la firma. En estas circunstancias, si el juez podía citar otra vista para recibir prueba pericial, porqué no podía permitir a la parte promovente del proceso completar su prueba con otro testigo que pudiera hacer tal afirmación. Al retomar la cuestión, el segundo juez partió de las incidencias celebradas y **de la prueba ya admitida. Sólo faltaba un testimonio y se limitó a recibirlo.** Siendo así, podía celebrarse la vista ante un juez distinto y éste podía completar los requisitos probatorios necesarios en este tipo de proceso.

Aún más, en el caso de autos se le permitió a la parte peticionaria que presentara su propia prueba pericial para rebatir el testimonio de los dos primeros testigos que adveraron la letra de la testadora. Aunque no tenía el tribunal obligación de atender tal reclamo durante el procedimiento, así lo hizo. En el plazo de cuatro años, desde que se inició el proceso hasta su disposición final, la parte peticionaria participó activamente de las audiencias, es decir, su intervención fue más allá de hacer meras *"observaciones oportunas"* de palabra, que es a lo que estaba facultada por ley. Sin embargo, no pudo en ese extenso plazo de tiempo impugnar la veracidad de tales testimonios ni la identidad de la letra de su causante. No erró el foro recurrido al extender la vista de adveración para recibir la prueba que completó la terna de testimonios que requiere el Artículo 551A del Código de Enjuiciamiento Civil, hasta adverar finalmente el testamento de doña Yveline Dubos Nocciolini. Dicho lo anterior, pasemos al segundo asunto que es de más compleja solución, la protocolización prematura del testamento.

### III

Al elevar los autos originales, hemos podido constatar que en el caso de autos hubo una inquietante laxitud en los procedimientos, por distintas razones, que tuvo como consecuencia la prematura protocolización de un testamento ológrafo aún no adverado de modo apropiado. Aunque tal irregularidad no vicia de nulidad las incidencias judiciales y mucho menos la validez del documento como disposición de última voluntad, las actuaciones judiciales y las del notario autorizante se desviaron del justo y ordinario proceder en este tipo de procedimientos en los que el rigor de las formalidades es mayor que de ordinario.

Por otra parte, la tardanza del tribunal en emitir su resolución final, luego de completar los testimonios requeridos por la ley —no importa la razón de tal proceder—, tuvo el efecto de que la protocolización precoz siguiera en vigor, con posibles consecuencias jurídicas cuestionables.

Una vez protocolizado el testamento ológrafo, los herederos en él instituidos se reputan tales frente a todo el mundo, y quienes nieguen su condición tienen el peso de probar que no lo son y, para lograrlo, tendrían que tener

éxito atacando la validez o la eficacia del testamento. **Esto se debe a que su condición de herederos instituidos ya no emanaría del manuscrito privado, sino de un documento público, porque la protocolización le da ese carácter al testamento ológrafo.** [...] En fin, como sostiene la doctrina, una vez protocolizado el manuscrito del causante, se dice *erga omnes*, es decir, *a todo el mundo*, que hay testamento, siempre que se identifiquen los herederos y legatarios y se definan las demás disposiciones propias de estos actos.

Efraín González Tejera, *Derecho de Sucesiones*, To. 2, pág. 161 (Editorial U.P.R. 2002).

En la resolución recurrida, el foro *a quo* advirtió a las partes que *"no [había] razón para impugnar el que se haya protocolizado el documento antes de completar un fragmento del procedimiento"* porque *"la integridad del testamento ológrafo ha estado salvaguardad[a] en todo momento"*. Ante esa realidad, el tribunal *"ratific[ó] todos los procedimientos y actuaciones previas por el Juez Ettiene Badillo Anazagasty y por el Notario Wilfredo R. Picorelli Osorio"*.

¿Es ratificable la protocolización prematura de un testamento ológrafo, hecha antes de haberse determinado que fue escrito y firmado de puño y letra por la testadora, sin que se unieran las incidencias **completas** del proceso de adveración y en ausencia de la resolución judicial que así lo ordena?

No hemos hallado respuesta a esta interrogante en la Ley Notarial ni en la doctrina patria o extranjera, pero la intuición judicial nos dirige a una respuesta negativa. El planteamiento sobre este desvío o apresuramiento en el proceso de protocolización del testamento ológrafo no es festinado. Nótese que la orden judicial es del 24 de mayo, notificada el 21 de junio de 2006, pero la escritura de protocolización pertenece a un protocolo notarial de 2002. Nótese, además, que es a partir de esa protocolización que el testamento ológrafo adquiere carácter de tal y puede servir para regular la última voluntad de la testadora. *"Mientras no se produce su adveración y protocolización, el testamento ológrafo es un mero documento privado sin eficacia jurídica mortis causa"*. González Tejera, *Op. Cit.*, To. 2, pág. 145. Este jurista apunta, además:

*"[C]on la orden cumplimentada, el manuscrito deja de ser un mero documento privado y se convierte en: "título bastante para la inscripción, total o parcial, en el registro de la propiedad, de los bienes inmuebles en que consista la herencia", como disponía el derogado Artículo 643 del Código Civil, sustituido hoy por el Artículo 551a del Código de Enjuiciamiento Civil. Como se recordará, cumplimentar la orden del tribunal implica incluir el testamento en el protocolo del notario que escojan los herederos, quien lo hará mediante la extensión de un acta de protocolización a petición de la secretaria o del secretario de la sala del juez que intervino en el procedimiento, de la cual deberán expedirse copias a los interesados. Como es de conocimiento de la profesión legal, la referida funcionaria del tribunal comparece ante el notario designado y lleva consigo **el original del manuscrito, la transcripción de las incidencias de la vista de adveración y la resolución que ordena la protocolización**. Luego, procede a otorgar el acta o escritura de protocolización."*

González Tejera, *Op. Cit.*, To. 2, pág. 160. Ver, además, *Ab Intestato Lugo Rodríguez*, 151 D.P.R., a las págs. 579-580.

Por otra parte, la protocolización prematura puede crear una apariencia jurídica incorrecta y comprometer los actos jurídicos que se hayan realizado a base de ella, ya sea sobre los bienes heredados o sobre la cualidad en que los herederos actúen respecto a los derechos y obligaciones que se transmiten por la sucesión *mortis causa*. Los juristas que han intervenido en este proceso debieron conocer esas consecuencias y actuar de conformidad.

Notamos que el notario estuvo siempre informado de los procesos coetáneos y posteriores a la primera audiencia y de los reclamos del peticionario sobre las deficiencias señaladas ante el foro de primera instancia y ante nos. El mismo día en que le fue notificada la resolución en la que resolvimos que el recurso KLCE-2002-01294 era prematuro, **porque faltaba la resolución que declarara la adveración y ordenara la**

**protocolización,** es decir, el 18 de diciembre de 2002, el Lcdo. Picorelli Osorio autorizó la escritura núm. 198 sobre Acta de Protocolización de Testamento Ológrafo de doña Yveline Dubos Nocciolini. Unió a esa escritura la transcripción de la vista del 14 de agosto de 2002 y la orden de entrega del documento por la secretaria, como únicas manifestaciones judiciales relativas a la protocolización. En la copia simple de la escritura 198 que obra en los autos originales no aparece ninguna referencia a alguna resolución que declare la adveración y ordene la protocolización del testamento de manera expresa y final. Tampoco surge de los autos originales que el notario o las partes hicieran gestiones para que el foro *a quo* dictara la resolución omitida antes de proceder a la protocolización.

Ante esta realidad, cualquiera de los dos jueces de primera instancia debió anular oportunamente la actuación notarial precoz, para que la protocolización fuera posterior a la orden que declaró que el testamento en cuestión era la última voluntad de doña Yveline Dubos Nocciolini y para que, en términos prácticos, se mantuvieran unidos la escritura de protocolización, el texto del testamento y la transcripción de los procesos judiciales apropiados y regentes. Así se ha intimado en la jurisprudencia que trata este tema.

En *Ab Intestato Lugo Rodríguez*, ya citado, el Tribunal Supremo se enfrentó a una situación muy similar. La solución ofrecida ante iguales circunstancias fue muy clara. *Primero*, no es posible alegar que la cuestión es académica porque ya existe una escritura de protocolización, *Id.*, 151 D.P.R., a la pág. 582. Tal trámite erróneo dijo el más alto foro, siendo nulo, **es revocable.** *Id.* Véase, además, a *Sucn. Díaz García, Ex Parte*, 137 D.P.R. 731, en el que también se protocolizó previamente el testamento y el Tribunal Supremo anuló todos los procedimientos que terminaron con esa protocolización. *Segundo*, ante tales circunstancias, procede corregir la desviación judicial y notarial y ordenar que las cosas se hagan como debieron hacerse desde un principio. Erró el foro recurrido al ratificar la protocolización precoz del testamento ológrafo de doña Yveline Dubos Nocciolini.

## IV

Por los fundamentos expresados, que se hacen formar parte de esta sentencia, expedimos el auto de *certiorari* solicitado para modificar la resolución recurrida en cuanto a la validez de la escritura de protocolización núm. 198 autorizada por el notario Lcdo. Wilfredo R. Picorelli Osorio el 18 de diciembre de 2002 y, a tenor de esta determinación, resolvemos lo siguiente.

Declaramos nula la escritura de protocolización núm. 198 y ordenamos la nueva protocolización del testamento aludido por el Lcdo. Picorelli Osorio. Éste desglosará de la escritura 198 el testamento original y el diario a manuscrito de la testadora Yveline Dubos Nocciolini, así como la transcripción de la vista celebrada el 14 de agosto de 2002, para unirlos a la nueva escritura de protocolización del susodicho testamento. El notario deberá unir a esta nueva escritura copia de todas las resoluciones dictadas por el Tribunal de Primera Instancia relativas al proceso de adveración del testamento y de las transcripciones de todas las vistas celebradas para la adveración del testamento de doña Yveline Dubos Nocciolini, así como copia de esta resolución. Sólo así se cumplirán las exigencias y formalidades requeridas por el Artículo 551A del Código de Enjuiciamiento Civil, hoy Ley de Procedimientos Legales Especiales. El Lcdo. Picorelli Osorio autorizará las actas requeridas ante estas circunstancias y hará las anotaciones de rigor para perpetuar y divulgar la nulidad de ese acto.

Así modificada, se confirma la resolución recurrida de 24 de mayo de 2006 que declaró la adveración y la protocolización del testamento de doña Yveline Dubos Nocciolini luego de cumplidos los procesos de rigor.

Notifíquese inmediatamente por la vía ordinaria.

Notifíquese copia de esta resolución a la Lcda. Carmen Hilda Carlo, directora de la Oficina de Inspección de Notaría.

Notifíquese también copia de esta resolución al Juez Hermán Lugo del Toro, para que agilice la reproducción prioritaria de la prueba oral vertida en las distintas vistas del caso de autos, la certificación de las resoluciones dictadas en los cuatro años que tardó el proceso y su entrega al notario autorizante.

Lo acordó y lo manda el tribunal y lo certifica la Secretaria Interina del Tribunal.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

## ESCOLIOS 2006 DTA 118

**1.** El Sr. Paleo declaró a las preguntas de la abogada del hijo de la testadora:

*"P. Por tanto, usted no tiene ni conoce el docu... que el documento haya sido escrito [de] puño y letra de doña Yveline.*

*R. Bueno, eh, eh, no. No, no puedo decir exactamente que lo haya escrito completamente ella, pero sí puedo certificar que la firma...*

*[...]*

*P. Pero el no...Puede o no puede.*

*R. No, no podría decirle exactamente que sí es exactamente la de ella, pero sí la firma que está ahí.*

*P. La firma sí.*

*R. Sí.*

*P. Pero el documento completo no.*

*R. No."*

**2.** Así fue anunciado su testimonio por la peticionaria del proceso, la aquí recurrida.

**3.** La petición de *certiorari* se notificó también al notario Picorelli Osorio.

**4.** Cabe señalar que el Tribunal de Primera Instancia advirtió a las partes que mostraran causa por la cual no debía desestimarse la petición al amparo de la Regla 39.2 de Procedimiento Civil. Este incidente es el que permite reanudar el procedimiento y proveer sobre su disposición final.

**5.** Advertimos que al peticionario se le dio la oportunidad de presentar su propio perito y no lo hizo. Aunque *quaere* si en esta vista en particular un heredero tiene derecho a así hacerlo.